STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodolfo GARCIA, Defendant-Appellant.††

Court of Appeals

*No. 99–1038–CR. Submitted on briefs January 21, 2000.—Decided February 16, 2000.*

2000 WI App 81

(Also reported in 610 N.W.2d 180.)

††Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Godfrey Y. Muwonge* of *Godfrey Y. Muwonge's Law Office, L.L.P.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Diane M. Welsh,* assistant attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Rodolfo Garcia appeals from an order denying his postconviction motion seeking to withdraw his pleas of no contest to four controlled substances charges.[1] Garcia contends that the trial court failed to comply with WIS. STAT. § 971.08(1)(c), which requires a trial court to personally advise a defendant who enters a plea of guilty or no contest of the risk of deportation. We hold that a trial court is required to personally address the defendant in the express words of the statute. However, pursuant to *State v. Chavez,* 175 Wis. 2d 366, 498 N.W.2d 887 (Ct.

---

[1] Garcia was convicted of two counts of delivery of a controlled substance pursuant to WIS. STAT. §§ 161.41(1)(h)1, 161.49(1) and (2)(a); one count of delivery of a controlled substance as a party to the crime pursuant to WIS. STAT. §§ 161.41(1)(h)2, 161.49(1) and (2)(a), and 939.05; and one count of possession of a controlled substance with intent to deliver as a party to the crime pursuant to §§ 161.41(1m)(h)3, 161.49(1) and (2)(a), and 939.05. All references to the Wisconsin statutes are to the 1993–94 version.

App. 1993), we determine that the trial court's failure to strictly follow the statute in this case was harmless error because Garcia has not demonstrated that he was prejudiced.

### *Procedural History*

¶ 2.    The facts are straightforward. The State charged Garcia with four counts of the unlawful delivery of a controlled substance. Two of the counts were charged as party to the crime offenses. Following a preliminary hearing, the State filed an information alleging the same charges except one of the party to the crime counts was changed to alleged possession with intent to deliver a controlled substance, rather than straight delivery.

¶ 3.    The parties then entered into a plea agreement whereby Garcia would plead no contest to the four charges and the State would recommend a maximum sentence of five years. In keeping with this agreement, Garcia pled no contest to all four charges at a plea hearing on March 27, 1996. He was represented by counsel and was assisted by an interpreter.[2] The trial court read each charge in the information to Garcia and advised him of the possible penalties. Following each statement by the trial court as to each charge, Garcia confirmed that he understood the information and then entered his no contest plea. The court then confirmed with Garcia that he had signed a written waiver of his constitutional rights, that he had

[2] At other proceedings, an interpreter was not used. In fact, at one of the postconviction hearings when Garcia appeared pro se, he participated via telephone. The transcript of that proceeding does not indicate that Garcia experienced any difficulty communicating with the trial court or the district attorney.

reviewed the document with his attorney and that he understood the information in the waiver document.

¶ 4.   The court then had the following exchange with Garcia through the interpreter:

> **THE COURT**: He understands all the information?
>
> **THE DEFENDANT**:   (Nods affirmative)
>
> **THE INTERPRETER**:   Yes.
>
> **THE COURT**:   Understands that if he's not a citizen of the United States he could be deported if he's found guilty?
>
> **THE DEFENDANT**:   (Nods affirmative)
>
> **THE INTERPRETER**:   Yes.

At the conclusion of the plea hearing, Garcia's attorney asked that the trial court authorize Garcia's transport to the offices of the Immigration and Naturalization Service (INS) in Milwaukee so Garcia could apply for permanent residence status in the United States.

¶ 5.   Garcia's sentencing hearing occurred on May 10, 1996. Once again, Garcia was represented by counsel and assisted by an interpreter. Following the statements of counsel and Garcia, the trial court and Garcia's counsel had the following exchange:

> **THE COURT**:   I've had occasion to contact the Probation/Parole Department for other information that nobody's discussed here today as to what's going to happen to Mr. Garcia on the basis of this conviction. And I guess no one knows for sure, other than he's not a citizen of the United States. His case will be referred to the Department of Immigration.
>
> **MR. NORBY**:   Your Honor, I can tell the Court something about that because I've dealt with other

individuals like Mr. Garcia. I know what the impact of certain sentence structures is. I know there are cutoffs.

**THE COURT**: Well, I guess the bottom line is nobody can predict for sure what's going to happen. Would you agree with that?

**MR. NORBY**: Nobody can predict for sure and I will tell you that it was a very important part of our plea negotiations that as a general rule of thumb the INS uses five year prison sentences as a cutoff and it particularly looks to whether or not the person is a—has a permanent resident alien status in his connections with the country . . . .

**THE COURT**: So it could go either way, I mean, that was my perception.

**MR. NORBY**: My understanding is five years would allow Mr. Garcia, if he w[as] willing to pay the federal penalties, would allow him to maintain his green card.

**THE COURT**: Well I guess my—the best information I could get was he is—would be automatically referred to the Department of Immigration.

**MR. NORBY**: There would be an INS detainer placed on him. In fact, all they're waiting for is the sentence today.

In accord with the plea agreement and the State's recommendation, the trial court sentenced Garcia to concurrent prison terms of five years.[3]

¶ 6. Approximately two years after the judgment of conviction was entered, Garcia filed a series of pro se motions seeking to withdraw his no contest pleas or,

---

[3] The trial court also imposed the minimum fines on each count.

alternatively, for a sentence reduction. In one of his motions addressing his plea withdrawal request, Garcia argued that the federal authorities were now considering deporting him because of a change in federal law.. Following a telephonic hearing on these motions, the trial court rejected all of Garcia's motions.

¶ 7.   On January 25, 1999, Garcia renewed his plea withdrawal request via a further motion filed by postconviction counsel. At the time of this filing, the INS had commenced deportation proceedings against Garcia. By the time the motion was heard on February 8, 1999, Garcia had been deported to Mexico.[4] In support of his motion, Garcia contended that the trial court had failed to follow the dictates of WIS. STAT. § 971.08(1)(c) when warning him about the risk of deportation. The trial court acknowledged that it had not warned Garcia in the express words of the statute. However, the court stated that it had conveyed the "essentials of [the statute]" and that Garcia had confirmed that he understood the risk of deportation. The court denied Garcia's motion. Garcia appeals.

### *Discussion*

¶ 8.   WISCONSIN STAT. § 971.08(1)(c) provides as follows:

(1)   Before the court accepts a plea of guilty or no contest, it shall do all of the following:
    . . . .

---

[4] The State does not argue that the issue was moot because Garcia had already been deported by the time of this hearing. We assume this is because a felony conviction against a noncitizen can result in not only deportation, but also "exclusion from admission to this country or the denial of naturalization, under federal law." WIS. STAT. § 971.08(1)(c).

(c)   Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

In addition, the same statute at subsec. (2) states in relevant part:

If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea.

¶ 9.   It is undisputed that the trial court did not use the express terms of WIS. STAT. § 971.08(1)(c) when advising Garcia about the risk of deportation. Garcia contends that this failure entitled him to withdraw his plea as a matter of law. We quote his argument: "[The] legislature's command is 'Do A. If you fail to do A, then do B.'" Garcia contends that the court did not do "A"—warn him in the express words of § 971.08(1)(c). Therefore, Garcia concludes that the court was obligated to do "B"—grant his motion to withdraw his pleas pursuant to subsec. (2).

¶ 10.   However, Garcia's argument overlooks *Chavez*, where we concluded that the otherwise clear directive of WIS. STAT. § 971.08(1)(c) is rendered ambiguous when read in conjunction with WIS. STAT. § 971.26 which states:

**Formal defects**. No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant.

The *Chavez* court held that § 971.26 was consistent with a harmless error analysis. *See Chavez*, 175 Wis. 2d at 370. The court stated, "[W]e conclude that the legislature did not intend a windfall to a defendant who was aware of the deportation consequences of his [or her] plea. As is true of a defendant who asserts ineffective counsel, prejudice is an essential component of the inquiry." *Id.* at 371.

¶ 11. Garcia challenges the *Chavez* holding, relying on the court of appeals' later decision in *State v. Issa*, 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994). There the court said, "Clearly and unambiguously, § 971.08(1)(c), STATS., requires a trial court to personally advise a defendant of the potential deportation consequences of a guilty plea." *Issa*, 186 Wis. 2d at 209. Garcia argues that we should follow this statement from *Issa*. In fact, in his reply brief, Garcia argues that *Chavez* was wrongly decided.

¶ 12. But Garcia's selective quote from *Issa* produces a far too narrow reading of the case. In fact, the *Issa* court not only acknowledged the harmless error rule of *Chavez, but also remanded the case to the trial court for that very exercise. See Issa,* 186 Wis. 2d at 210–11. Thus, *Issa* and *Chavez* stand comfortably together. We reject Garcia's attempt to drive a wedge between the two cases.

¶ 13. When the trial court acknowledged at the postconviction hearing that it had not followed the express dictates of WIS. STAT. § 971.08(1)(c), the court went on to demonstrate how that failure was of no

consequence in this case. Although the court did not expressly invoke *Chavez*, its analysis was the functional equivalent of a harmless error analysis. We now review that determination, and we uphold it for a number of reasons.

¶ 14.  First, the trial court, working through the interpreter, warned Garcia about the risk of deportation. Second, the court established that Garcia understood that if he was not a citizen he could be deported. Third, Garcia confirmed that he understood this warning. Fourth, the trial court repeatedly said during the plea hearing that no one could say for certain what the position of the INS would be regarding deportation. Fifth, the exchange between the court and Garcia's counsel at the sentencing hearing established that the risk of deportation was a prime consideration in the negotiation of the plea agreement. Garcia makes no claim that he was not consulted regarding the factors motivating the plea agreement.[5] This record establishes that Garcia was not prejudiced by the trial court's failure to follow the express mandate of WIS. STAT. § 971.08(1)(c).

¶ 15.  In *State v. Lopez*, 196 Wis. 2d 725, 727, 539 N.W.2d 700 (Ct. App. 1995), the record at the plea

[5] Garcia also argues that the advice from his trial counsel regarding the INS's "five year rule" was inaccurate. That argument would seem more properly raised by an ineffective assistance of counsel claim or by a claim that Garcia's plea was not knowingly entered. However, the issue on appeal is whether the trial court correctly warned Garcia about the risk of deportation and, if not, whether Garcia nonetheless knew of such risk. Clearly Garcia knew of the risk of deportation since his plea bargain, whether properly counseled or not, was premised on the knowledge of that risk.

312

hearing was devoid of *any* reference to deportation. Relying on this failing, Lopez sought to withdraw his plea. At the postconviction hearing, the State used the testimony of Lopez's trial counsel to establish that Lopez nonetheless knew of the deportation risk. *See id.* at 728. Conducting a *Chavez* harmless error analysis, the court of appeals approved this procedure and upheld the trial court's finding of harmless error. *See Lopez*, 196 Wis. 2d at 731–32. If that result pertains in a case where the plea hearing is barren of any reference to deportation, the same result must surely ensue where the plea hearing record establishes that the defendant was warned of the deportation risk.

¶ 16. We make a final observation, admittedly dicta, but nonetheless important. We agree with the *Issa* court that WIS. STAT. § 971.08(1)(c) is clear in its directive to the trial courts of this state. The statute not only commands what the court must personally say to the defendant, but the language is bracketed by quotation marks, an unusual and significant legislative signal that the statute should be followed to the letter. While harmless error is sometimes a safety net for trial courts, it is not always a guarantee. We urge all trial courts to follow the express mandate of § 971.08(1)(c).

### Conclusion

¶ 17. Although the trial court did not follow the express procedures of WIS. STAT. § 971.08(1)(c), we hold that the error was harmless because the failure did not prejudice Garcia.

*By the Court.*—Order affirmed.