STATE of Wisconsin, Plaintiff-Respondent,

v.

Sisakhone S. DOUANGMALA, Defendant-Appellant-Petitioner.

Supreme Court

*No. 00–3292–CR. Oral argument April 10, 2002.—Decided June 19, 2002.*

2002 WI 62

(Also reported in 646 N.W.2d 1.)

For the defendant-appellant-petitioner there were briefs by *Robert R. Flatley* and *Will & Flatley,* Green Bay, and oral argument by *Robert R. Flatley.*

For the plaintiff-respondent the cause was argued by *Shunette T. Campbell,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals.[1] The court of appeals affirmed an order of the Circuit Court for Brown County, Donald R. Zuidmulder, Judge, denying the motion of Sisakhone S. Douangmala, the defendant, to withdraw his plea of no contest.

¶ 2. Wisconsin Stat. § 971.08(1)(c) (1999–2000)[2] requires a circuit court to address a defendant personally and advise the defendant as follows: "If you are not

---

[1] *State v. Douangmala,* No. 00–3292–CR, unpublished slip op. (Wis. Ct. App. July 31, 2001).

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version, unless otherwise indicated.

a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

¶ 3. This case presents the following question: If a circuit court fails to give the deportation[3] warning required by § 971.08(1)(c), when accepting a guilty or no-contest plea, is a defendant entitled to withdraw the plea later upon a showing that the plea is likely to result in the defendant's deportation, regardless of whether the defendant was aware of the deportation consequences of the plea at the time the defendant entered the plea?

¶ 4. We answer the question presented in the affirmative. We conclude that Wis. Stat. § 971.08(2) expressly sets forth the remedy to be granted upon a defendant's motion if a circuit court fails to advise a defendant about deportation consequences as required by § 971.08(1)(c) and if the defendant shows that the plea is likely to result in deportation. Section 971.08(2) states that under these circumstances the circuit court "shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea."[4] The defendant in the present case fulfilled the conditions set forth in § 971.08(2), and accordingly we reverse the decision of the court of

---

[3] We use the word "deportation" to mean deportation, exclusion from admission to this country, or denial of naturalization as described in Wis. Stat. § 971.08(1)(c) and (2).

[4] Wisconsin Stat. § 971.08(2) states, in relevant part: "If a court fails to advise a defendant as required by sub.(1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's

appeals affirming the order of the circuit court that denied the defendant's motion to withdraw his no-contest plea. We remand the cause to the circuit court to vacate the judgment of conviction and permit the defendant to withdraw his plea and enter another plea.

I

¶ 5.   For the purposes of this review, the facts are not in dispute.

¶ 6.   The defendant, Sisakhone S. Douangmala, is a native of Laos and is not a U.S. citizen. On March 12, 1998, a criminal complaint was filed against the defendant. A preliminary hearing was scheduled for March 18, 1998, at which time defense counsel requested that an interpreter be appointed for the defendant. Defense counsel stated that "[a]lthough [the defendant] is English-speaking, he was born in Laos, [and] has been in the United States about ten years. The Laotian language is his primary language. He has not completed middle school . . . . We can converse on most levels, but the legal process, legal word terminology, I'm not so sure." No interpreter was found and none was involved in the present case.

¶ 7.   On March 30, 1998, the defendant waived his right to a preliminary hearing and an Information was filed. At that time, the circuit court queried the defendant as to whether he was having any difficulty understanding his attorney or understanding what was going on in the hearing. The defendant replied, "A little bit, yeah. . . . The language. I don't understand. Like I learned my language from the street; I don't learn it

motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea."

177

from the school. So basically if you come up with me with a big word, then I don't understand it."

¶ 8. On September 21, 1998, an Amended Information was filed, the defendant filed a Request to Enter Plea and Waiver of Rights form, and the defendant entered a plea of no contest. Question 17 of the Request to Enter Plea and Waiver of Rights form states:

> I understand that if I am not a citizen of the United States of America, a plea of guilty or no contest to the offense(s) for which I am charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law.

¶ 9. The defendant initialed the blank in the margin to indicate that he understood the statement.[5] The form also noted that he had completed the ninth grade in school, and the attorney wrote that the defendant could read, write, and understand the English language "20% and with help."

¶ 10. Prior to accepting the plea of no contest, the circuit court questioned the defendant in detail, including asking if he was confident that he could understand what was going on in the proceeding, to which the defendant replied, "A little bit, not much." However, at no time during the questioning did the circuit court ask the defendant whether he understood what the word "deportation" meant. Moreover, the circuit court failed to comply with Wis. Stat. § 971.08(1)(c), which requires that before a court accepts a plea of guilty or no contest,

---

[5] In *State v. Issa*, 186 Wis. 2d 199, 202, 519 N.W.2d 741 (Ct. App. 1994), the court of appeals concluded that if the circuit court does not personally advise the defendant regarding deportation, the mere reference to the guilty plea questionnaire does not satisfy Wis. Stat. § 971.08(1)(c).

it shall give the advice set forth in § 971.08(1)(c) that deportation may result from the plea.

¶ 11. On January 6, 1999, the defendant was sentenced to consecutive sentences totaling 25 years in prison, including ten years for being a party to the crime of burglary, ten years for being a party to the crime of robbery, and five years for false imprisonment.

¶ 12. Following his conviction, the defendant received a written notice from the federal government ordering him to appear at a deportation hearing. The defendant appeared and was subsequently ordered deported because of the conviction resulting from his no-contest plea.

¶ 13. The defendant filed a post-conviction motion seeking to withdraw his plea of no contest on several grounds, including the claim that he entered the plea without understanding the deportation consequences of the plea. The circuit court denied the motion. The court of appeals reversed the circuit court and remanded the cause for a hearing and findings of fact regarding the defendant's understanding of the possibility of deportation at the time he entered his no-contest plea.[6]

¶ 14. On remand, the circuit court held an evidentiary hearing, at which the defendant testified that his first knowledge regarding deportation occurred when he was notified in prison about the deportation hearing. When asked whether he would have pled no contest if he understood that he could be deported to Laos, the defendant replied, "Oh, no, no, no." The defendant testified that he could not read the Request to Enter Plea and Waiver of Rights form and that he relied on his

---

[6] *See State v. Douangmala,* No. 99–2403–CR, unpublished slip op. (Wis. Ct. App. June 20, 2000).

attorney to read it to him. He further testified to having no recall of a discussion with his attorney regarding Question 17 on the form, which discusses the potential for deportation if a defendant pleads guilty or no contest.

¶ 15. Defense counsel also testified at the evidentiary hearing. She stated that she had no independent recollection of discussing deportation or Question 17 with the defendant, but that it was her practice to go carefully through the form and to discuss with her clients the consequences of a plea, which could include deportation.

¶ 16. The circuit court denied the defendant's motion to withdraw his no-contest plea. The court of appeals affirmed the circuit court's denial, concluding that the State presented sufficient evidence to support the circuit court's finding that the defendant knew of the deportation consequences at the time he entered his plea.

¶ 17. We have stated the facts fully as they relate to whether the defendant knew of the deportation consequences of his plea at the time of his plea. The parties briefed and argued this issue. They disagree whether the State has failed to show by clear and convincing evidence that the defendant knowingly, voluntarily, and intelligently entered a plea of no contest. We do not address this issue because we conclude that it is not determinative of the question whether the circuit court must permit the defendant to withdraw his plea. Accordingly we asked the parties for supplemental letter briefs, asking them in effect to address the following issue, which we conclude is determinative: If a circuit court fails to give the deportation warning required by Wis. Stat. § 971.08(1)(c) when accepting a guilty or no-contest plea, is a defendant

180

entitled to withdraw the plea later upon a showing that the plea is likely to result in deportation, regardless of whether the defendant was aware of the deportation consequences of the plea at the time the defendant entered the plea?

## II

¶ 18. Three Wisconsin statutes come into play in resolving the issue presented: § 971.08(1)(c) (circuit court must give deportation advice); § 971.08(2) (a remedy for the failure of the circuit court to give advice); and § 971.26 (harmless error).

¶ 19. We begin our analysis with Wis. Stat. § 971.08(1)(c), which requires the circuit court to give a defendant advice about deportation before accepting a plea of guilty or no contest. Wisconsin Stat. § 971.08(1)(c) states:

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

. . . .

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

¶ 20. The circuit court failed to comply with this statutory mandate when it did not address the defendant personally to advise him in the words set forth in Wis. Stat. § 971.08(1)(c) of the deportation consequences of the plea. Indeed, the circuit court failed to

181

discuss with the defendant the issue of deportation at all prior to or during the plea hearing.

¶ 21. We agree with the court of appeals that Wis. Stat. § 971.08(1)(c) is a clear directive to the circuit courts and that it "not only commands what the court must personally say to the defendant, but the language is bracketed by quotation marks, an unusual and significant legislative signal that the statute should be followed to the letter."[7]

¶ 22. The State argues that when a circuit court fails to comply with Wis. Stat. § 971.08(1)(c), the State must prove by clear and convincing evidence that the defendant knew of the deportation consequences of the plea at the time of the plea. The State argues that if it meets this burden, then the circuit court's failure to comply with § 971.08(1)(c) is harmless error and the defendant should not be permitted to withdraw the no-contest plea.

¶ 23. To evaluate the State's position about the effect of a violation of Wis. Stat. § 971.08(1)(c), we turn to § 971.08(2). Section 971.08(2) requires a circuit court to "vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea" when a defendant meets the following three conditions: (1) the defendant makes a motion; (2) the circuit court has failed to advise the defendant under § 971.08(1)(c) regarding the deportation consequences of a no-contest plea; and (3) the defendant shows that the plea is likely to result in his being deported.

¶ 24. Section 971.08(2) provides as follows:

---

[7] *State v. Garcia,* 2000 WI App 81, ¶ 16, 234 Wis. 2d 304, 610 N.W.2d 180.

If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

¶ 25. The defendant in the present case has met all three conditions set forth in Wis. Stat. § 971.08(2). First, the defendant made the appropriate motion. Second, the circuit court failed to advise the defendant under § 971.08(1)(c) regarding the deportation consequences of a no-contest plea. Third, both the State and the defendant agree that the defendant has shown, pursuant to § 971.08(2), "that the plea is likely to result in the defendant's deportation." The precise words of § 971.08(2) lead inexorably to one conclusion in the present case: the circuit court must permit the defendant to withdraw his plea.

¶ 26. The State argues that this literal reading of Wis. Stat. § 971.08(2) is contrary to the legislative intent. The State submits that § 971.08(2) is ambiguous because neither it nor § 971.08(1)(c) refers to the possibility that a defendant might be independently aware of the deportation consequences at the time of entering the plea.

¶ 27. The State contends that the legislative history of 1985 Wis. Act 252, which created Wis. Stat. § 971.08(1)(c) and (2), reveals that the legislature's intent was to protect only those who *unwittingly* enter a guilty or no-contest plea. The State's position is that before a circuit court is required to

183

grant a defendant's motion to withdraw a no-contest plea under § 971.08(2), the circuit court must determine whether the defendant understood the deportation consequences of the plea despite the circuit court's failure to advise the defendant personally pursuant to § 971.08(1)(c).

¶ 28. The State relies on materials submitted to the Legislative Reference Bureau by the legislators who requested the draft bill. One comment in the materials describes statutes similar to Wis. Stat. § 971.08 as going "a long way to alleviate the hardship and unfairness involved when an alien unwittingly pleads guilty or *nolo contendere* to a charge without being informed of the immigration consequences of such a plea."[8]

¶ 29. In contrast to these materials in the bill drafting file, the Legislative Reference Bureau's analysis of 1985 Senate Bill 541 states: "The bill also describes the procedure for withdrawing a plea on the basis of the failure to give this advice [set forth in Wis. Stat. § 971.08(1)(c)]." Nothing in the Legislative Reference Bureau's analysis of the bill states that the defendant is granted relief under § 971.08(2) only if the defendant had *unwittingly* pled to the charge when the circuit court failed to inform the defendant of the deportation consequences of such a plea. Senate Bill 541 was adopted verbatim as § 971.08(1)(c) and (2).

¶ 30. The Legislative Reference Bureau's analysis of a bill is printed with and displayed on the bill when it is introduced in the legislature.[9] All the legislators thus had the opportunity to read the Legislative Refer-

_____

[8] *See* 1985 S.B. 541 Drafting Request LRB 4665 with attachment.

[9] Wis. Stat. § 13.92(1)(b)2.

184

ence Bureau's analysis of the bill at issue here, but they did not necessarily know what was in the original drafting records.

¶ 31. The legislative history therefore persuades us that the legislature intended what the statute explicitly states.[10] Section 971.08(2) states that if the conditions set forth therein are met (and they were in the present case), the circuit court "shall" vacate the judgment and shall permit the defendant to withdraw the plea. The word "shall" in a statute is presumed to be mandatory unless a different construction is necessary to carry out the legislature's clear intent.[11] Nothing in

---

[10] The court of appeals examined the original drafting records and concluded that "the legislature did not intend a windfall to a defendant who was aware of the deportation consequences of his plea." *State v. Chavez,* 175 Wis. 2d 366, 371, 498 N.W.2d 887 (Ct. App. 1993).

The original drafting records indicate that several states had adopted a statute similar to the one the Wisconsin legislature was considering. The California court of appeals has interpreted the California statute similarly to how the Wisconsin court of appeals has interpreted the Wisconsin statute. *See People v. Murillo,* 39 Cal. App. 4th 1298, 1305–06 (Cal. Ct. App. 1995) (to withdraw a guilty plea, the defendant must establish that the trial court failed to advise of deportation consequences as required by statute and also that the defendant was unaware of deportation consequences when entering the plea and would not have entered the plea had the defendant been aware of the consequences).

[11] *State v. Koopmanns,* 210 Wis. 2d 670, 677, 563 N.W.2d 528 (1997); *In Interest of C.A.K.,* 154 Wis. 2d 612, 621, 453 N.W.2d 897 (1990).

Wis. Stat. § 971.08 points to a different interpretation of the word "shall" than an interpretation that the word signifies a mandatory act.

¶ 32. The third statute is Wis. Stat. § 971.26, a harmless-error statute providing that no proceeding shall be affected by reason of any defect or imperfection in matters of form that do not prejudice the defendant.[12] Section 971.26 provides as follows:

> Formal Defects. No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant.

¶ 33. The State argues that the harmless-error rule applies to Wis. Stat. § 971.08(1)(c) and (2) and urges us to adhere to *State v. Chavez*, 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993), in which the court of appeals applied the harmless-error test.

¶ 34. In *Chavez*, a Paraguayan alien pled guilty to first-degree reckless homicide. The circuit court failed to advise him pursuant to Wis. Stat. § 971.08(1)(c) of the deportation consequences of his plea. After Chavez was convicted, he filed a motion to withdraw his plea, arguing that § 971.08(2) entitled him to withdraw his

---

[12] Furthermore, Wis. Stat. § 805.18 directs courts to disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party. It also provides that no judgment shall be reversed unless the error affected the substantial rights of the party seeking to reverse or set aside the judgment. Section 805.18 governs criminal prosecutions by virtue of Wis. Stat. § 972.11. *State v. Dyess*, 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985).

plea even though he was aware of the likelihood of deportation when he entered his plea. The circuit court denied the motion.

¶ 35. On appeal, Chavez argued that because Wis. Stat. § 971.08(2) states that a defendant "shall" have the right to withdraw a plea, the statute mandates that the circuit court allow Chavez to withdraw his plea regardless of his knowledge of the deportation consequences at the time of the plea. Chavez argued that his knowledge about deportation at the time of his plea was irrelevant under the statute.

¶ 36. The court of appeals concluded in *Chavez* that while Wis. Stat. § 971.08(2) could be read literally to mean what it says, an ambiguity was created by the interaction between § 971.08(2) and § 971.26, the harmless-error statute. The court of appeals further concluded that when Wis. Stat. § 971.08(2) is read in conjunction with § 971.26, the appropriate interpretation of § 971.08(2) is that the judgment of conviction may stand if the circuit court's failure to advise Chavez about the deportation consequences of the plea did not prejudice him. Chavez was not prejudiced, wrote the court of appeals, because he conceded he knew about the deportation consequences of the plea at the time of his plea without any advice from the court. It is not clear from the opinion whether Chavez showed that his plea was likely to result in his deportation.

¶ 37. The *Chavez* harmless-error rule has been followed in *State v. Issa*, 186 Wis. 2d 199, 209, 519 N.W.2d 741 (Ct. App. 1994); *State v. Lopez*, 196 Wis. 2d 725, 732, 539 N.W.2d 700 (Ct. App. 1995); and *State v. Garcia*, 2000 WI App 81, ¶ 1, 234 Wis. 2d 304, 610 N.W.2d 180. In *Issa, Lopez*, and *Garcia*, each defendant satisfied all three conditions of Wis. Stat. § 971.08(2).

¶ 38. In *Issa,* the defendant was not given Wis. Stat. § 971.08(1)(c) advice, and he was detained for deportation. Relying on the *Chavez* harmless-error rule, the court of appeals remanded the cause for an evidentiary hearing to determine whether in fact the defendant knew at the time of his plea that he was subject to deportation upon his conviction. If he knew, then no withdrawal of his plea would be allowed.

¶ 39. In *Lopez,* the defendant was not given Wis. Stat. § 971.08(1)(c) advice. The defendant was conclusively presumed deportable. An evidentiary hearing showed that the defendant knew at the time of the plea that he was subject to deportation upon his conviction. The failure to give the § 971.08(1)(c) advice was therefore harmless error.

¶ 40. In *Garcia,* the circuit court advised the defendant of the deportation consequences of his plea but not in the words of Wis. Stat. § 971.08(1)(c). The Immigration and Naturalization Service began deportation proceedings and then deported the defendant. The court of appeals concluded that the circuit court's failure to strictly follow the statute was harmless error because the defendant understood the deportation consequences at the time of the plea.[13]

---

[13] Two other cases related to *Chavez* are of interest. In *State v. Baeza,* 174 Wis. 2d 118, 125, 130, 496 N.W.2d 233 (Ct. App. 1993), the defendant was not given the § 971.08(1)(c) advice, and he was conclusively presumed to be deportable. The court of appeals ruled that the circuit court must allow Baeza to withdraw his plea. The *Baeza* case has been interpreted by the court of appeals as not involving the harmless-error test because Baeza did not know of the deportation consequences of his plea at the time of the plea. *See State v. Issa,* 186 Wis. 2d 199, 207 n.2, 519 N.W.2d 741 (Ct. App. 1994); *Chavez,* 175 Wis. 2d at 369.

¶ 41.   The State urges us to apply principles of stare decisis to affirm *Chavez* and its progeny in interpreting Wis. Stat. § 971.08(2). The State argues that *Chavez* was decided in 1993, that several court of appeals cases have applied the *Chavez* holding in cases falling within § 971.08(2), and that the legislature has not amended § 971.08(2) to overturn the *Chavez* holding. The State further urges that the harmless-error rule applied to § 971.08(2) has been a fair and workable rule; that the circuit court is the best arbiter of whether a defendant knew or understood the deportation consequences of the plea; and that the evidentiary hearing required under *Chavez* has not presented difficulties. The State argues that no compelling reason exists to justify overruling *Chavez*.

¶ 42.   The principle of stare decisis is applicable to the decisions of the court of appeals.[14] Stare decisis requires us to abide by precedent established by the court of appeals unless a compelling reason exists to overrule the precedent. The principle of stare decisis does not, however, require us to adhere to interpretations of statutes that are objectively wrong. That the legislature has not taken action with respect to a statute that a court has construed is entitled to some

In *State v. Rodriguez*, 221 Wis. 2d 487, 494–95, 585 N.W.2d 701 (Ct. App. 1998), the circuit court gave the Wis. Stat. § 971.08(1)(c) advice, but the defendant thought he was a citizen. He was not a citizen, and the Immigration and Naturalization Service filed a notice of detainer. The court of appeals held that his misunderstanding of his citizenship did not render his plea constitutionally infirm as not voluntarily, knowingly, and intelligently entered.

[14] *Cook v. Cook*, 208 Wis. 2d 166, 186, 560 N.W.2d 246 (1997).

weight in determining legislative intent, but it is not conclusive.[15] As we have explained, we conclude that the *Chavez* harmless-error interpretation of Wis. Stat. § 971.08(2) is objectively wrong under the language of the statute. Accordingly, we overrule *Chavez,*[16] *Issa,*[17] *Lopez,*[18] *and Garcia*[19] to the extent that these cases hold that harmless-error principles apply to a defendant who satisfies the conditions set forth in § 971.08(2).

### III

¶ 43. Once again, we see the difficulties that persons who cannot hear, speak, or, as in the present case, understand the English language encounter in our legal system. The defendant in the present case stated several times that he was unable to understand much of the language being used during the legal proceedings at hand. In the Request to Enter Plea and Waiver of Rights form, the defendant's attorney wrote that the defendant's ability to read, write, and understand the English language was "20% and with help." The attorney testified that what she meant was "that he can read 20 percent and write 20 percent. In other words that's . . . his skill level, and beyond that he needs help in terms of reading, writing, and understanding the English language. In other words, that's his capacity, and he operates at about 20 percent of comprehension."

---

[15] *Reiter v. Dyken,* 95 Wis. 2d 461, 470–71, 290 N.W.2d 510 (1980).

[16] 175 Wis. 2d 366.

[17] 186 Wis. 2d 199.

[18] 196 Wis. 2d 725.

[19] 234 Wis. 2d 304.

Although an attempt was made to locate an interpreter, none was found. So no interpreter was provided.[20]

■

¶ 44.   This court has stated that fairness requires that those who speak and understand only languages other than English and who become defendants in Wisconsin's criminal courts should have the assistance of interpreters when needed.[21] If a criminal defendant is personally unable to pay for the services of an interpreter, one will be provided at public expense.[22]

---

[20] Wisconsin Stat. § 885.37 provides that if a person is charged with a crime and is unable to speak or understand English, "the court shall make a factual determination of whether the language difficulty . . . is sufficient to prevent the individual from communicating with his or her attorney, reasonably understanding the English testimony or reasonably being understood in English. If the court determines that an interpreter is necessary, the court shall advise the person that he or she has a right to a qualified interpreter and that, if the person cannot afford one, an interpreter will be provided for him or her at the public's expense. Any waiver of the right to an interpreter is effective only if made voluntarily in person, in open court and on the record." This procedure was not explicitly followed in the present case.

[21] *State v. Piddington,* 2001 WI 24, ¶ 43 n.23, ¶¶ 56–58, 241 Wis. 2d 754, 623 N.W.2d 528; *State v. Naeve,* 117 Wis. 2d 359, 365–66, 344 N.W.2d 181 (1984), *overruled on other grounds by State v. Koch,* 175 Wis. 2d 684, 693–94, 499 N.W.2d 152, *cert. denied,* 510 U.S. 880 (1993).

[22] *Naeve,* 117 Wis. 2d at 366.

The Wisconsin state legislature recently adopted Wis. Stat. § 885.38 (published 2/15/02) governing interpreters in circuit and appellate courts.

¶ 45. As Wisconsin's immigrant population grows,[23] obtaining qualified interpreters for an ever-growing, diverse, and multi-language population remains a high priority.[24] The present case again illustrates the necessity of the legislative, executive, and judicial branches of government of this state working together to provide qualified interpreters for persons who cannot hear, speak, or understand English to preserve their meaningful access to the legal system.[25]

## IV

¶ 46. In summary, we conclude that Wis. Stat. § 971.08(1)(c) sets forth the language a circuit court must use to inform a defendant of the deportation consequences of entering a plea of guilty or no contest. In the present case, the circuit court did not advise the defendant in any manner regarding the deportation consequences of entering a plea of no contest. If a circuit court fails to give the statutorily mandated advice and if a defendant moves the court and demonstrates that the plea is likely to result in the defendant's deportation, then § 971.08(2) requires the circuit court to vacate the conviction and to permit the defendant to

---

[23] The 2000 U.S. census shows Hispanic and Asian populations in Wisconsin doubled in one decade. Larry Sandler and Greg Borowski, *Madison, Dane County lead growth; Fox Valley grows twice as fast as state's southeastern region,* Milwaukee Journal Sentinel, March 9, 2001, at 1A.

[24] For a discussion of issues regarding interpreters, see Committee to Improve Interpreting and Translation in the Wisconsin Courts, Report to the Director of State Courts, *Improving Interpretation in Wisconsin Courts: And Justice for All* (Oct. 2000).

[25] *Piddington,* 241 Wis. 2d 754, ¶ 58 (Abrahamson, C.J., concurring).

withdraw the guilty or no-contest plea. Applying § 971.08(2) in the present case, we reverse the decision of the court of appeals affirming the order of the circuit court that denied the defendant's motion to withdraw his no-contest plea. We remand the cause to the circuit court with direction to vacate the judgment of conviction and permit the defendant to withdraw his plea and enter another plea.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.