ANN WALSH BRADLEY, J.
¶ 76. (dissenting). As a circuit court judge, I handled thousands of cases. Many of those cases dealt with imposing consequences and holding people accountable. They were required to follow the law.
*560 ¶ 77. Additionally, as a supreme court justice, I have reviewed thousands of cases which have imposed consequences and held people accountable. They were required to follow the law.
¶ 78. Those experiences inform how I approach this case. I come to this case with what should be the unremarkable observation that circuit court judges and supreme court justices should be held to follow the law.
¶ 79. The law clearly requires judges to "personally" advise defendants of deportation consequences when entering a guilty plea. With unusual emphasis underscoring the requirement, the legislature actually sets forth the explicit wording, detailing what the judge is to say. Judges are to:
Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
Wis. Stat. § 971.08(l)(c).
¶ 80. The legislature mandates the remedy of plea withdrawal if the judge fails to personally explain deportation consequences. If the prerequisites are met, the statute does not provide for a remedy of "maybe plea withdrawal" or "plea withdrawal upon compliance with a maze of conditions." Rather, the law clearly provides that the court "shall vacate" the judgment and "permit the defendant to withdraw the plea."
If a court fails to advise a defendant as required by sub. (l)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclu *561 sion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea.
Wis. Stat. § 971.08(2).
¶ 81. Here the circuit court judge failed to follow the law. He did not give the deportation warning as mandated.
¶ 82. And the majority of the supreme court fails to follow the law. Instead of following the clear remedy of plea withdrawal set forth in the statute, the majority engrafts all sorts of conditions onto the statute. One need almost be a "Philadelphia lawyer" to follow the byzantine maze of added conditions that the majority embraces.
¶ 83. The consequence of the majority opinion is unfortunate. It is not a mere error of law but an error that affects life and liberty.
¶ 84. For this defendant and others similarly situated, the majority appears to erase from the statutory text the legislatively mandated remedy. In reaching its conclusion, the majority ignores the express language of the statute, the purpose behind Wis. Stat. § 971.08, and our case law interpreting it.
¶ 85. Because I conclude that Wis. Stat. § 971.08 means what it says and that we are required to follow it, I respectfully dissent.
*562 I
¶ 86. This case involves a non-citizen defendant who did not receive the required deportation warning.[1] Paramount to the analysis is the language of the statute.
¶ 87. Wisconsin Stat. § 971.08(2) provides that if a court has failed to personally inform a defendant that a plea may result in deportation, and it is later shown that the plea is likely to result in deportation, "the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea." (Emphasis supplied.)
¶ 88. Rather than follow the dictates of the statute, the majority imposes the restraints of Wis. Stat. § 974.06 and State v. Escalona-Naranjo, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), without questioning whether they apply. In superimposing § 974.06 and Escalona-Naranjo onto the clear words of the statute, the majority rewrites the statute for the defendant and others similarly situated. Now they are required to meet a multitude of conditions that cannot be found anywhere in the statute.
¶ 89. In essence, the majority's response to the clear legislative mandate is as follows:
*563 • OK, we shall vacate and permit plea withdrawal, but only if the defendant alleges that second post-conviction counsel "was constitutionally ineffective in the second postconviction motion for failing to raise a claim about [first postconviction counsel's] ineffectiveness for failing to bring a plea withdrawal claim in the first postconviction motion." Majority op., ¶ 51.
• OK, we shall vacate and permit plea withdrawal, but only if defendant alleges that [first postconviction counsel] "was constitutionally ineffective in the first postconviction motion for failing to raise the plea withdrawal claim." Id,., ¶ 51.
• OK, we shall vacate and permit plea withdrawal, but only if the defendant alleges "why and how his postconviction counsel was constitutionally ineffective." Id., ¶ 36.
• OK, we shall vacate and permit plea withdrawal, but only if the defendant shows "sufficient reason" for not bringing the claim in an earlier motion or appeal. Id., ¶ 34.
• OK, we shall vacate and permit plea withdrawal, but only if the defendant demonstrates that the claim now made is "clearly stronger" than previously made claims.[2] Id., ¶ 46.
*564 • OK, we shall vacate and permit plea withdrawal, but only if the defendant alleges "sufficient material facts — e.g., who, what, where, when, why, and how" — that if true would entitle the defendant to the relief sought. Id., ¶ 37.
¶ 90. Nothing in Wis. Stat. § 971.08(2) requires a defendant to bring a motion to withdraw under the auspices of Wis. Stat. § 974.06. Nothing in Wis. Stat. § 971.08(2) indicates that a motion to withdraw can be brought under another statute. Indeed, courts have repeatedly considered motions to withdraw under Wis. Stat. § 971.08(2) without reference to Wis. Stat. § 974.06. See, e.g., State v. Negrete, 2012 WI 92, 343 Wis. 2d 1, 819 N.W.2d 749; State v. Douangmala, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1; State v. Vang, 2010 WI App 118, 328 Wis. 2d 251, 789 N.W.2d 115; State v. Bedolla, 2006 WI App 154, 295 Wis. 2d 410, 720 N.W.2d 158.
¶ 91. The apparent reason the majority incorporates the § 974.06 and the Escalona-Naranjo standard is because it considers the defendant's motion untimely under Wis. Stat. § 971.08(2). Majority op., ¶ 66. Yet, unlike the other statutory procedures for postcon *565 viction motions, Wis. Stat. § 971.08(2) imposes no time limitations. See, e.g., Wis. Stat. §§ 809.30 and 974.02 (requiring defendant to file notice of appeal or motion seeking postconviction relief within 60 days after service of transcript or court record).
¶ 92. It is impractical to expect a defendant to move timely to withdraw a plea on a ground for which he would have no knowledge. As explained in Vang, 328 Wis. 2d 251, ¶ 14, "[t]he statute anticipates that the motion to vacate the judgment and withdraw the plea will be submitted following a qualifying event in the future and reserves the right to defendants who demonstrate they have suffered the particular harm."
¶ 93. Notably, the qualifying event, notice of deportation, will often be long after the timeframes for filing for postconviction relief under Wis. Stat. §§ 974.02 and 809.30 have expired. One commentator observed, "it often takes more than a decade for the INS (now ICE) to initiate deportation proceedings." Cody Harris, Comment, A Problem of Proof: How Routine Destruction of Court Records Routinely Destroys a Statutory Remedy, 59 Stan. L. Rev. 1791, 1805 (2007).[3] Thus, the majority's suggestion that Romero *566 Georgana's motion would be untimely under Wis. Stat. § 971.08(2) is supported neither by practicality nor by the text of the statute.
II
¶ 94. The majority's failure to honor the statutory language undermines not only the legislative intent as expressed by the clear words of the statute, but also the important purpose behind Wis. Stat. § 971.08. When passed in 1985, it was intended to serve as a safeguard, ensuring that a non-citizen defendant not unwittingly plead guilty because he was unaware of the significant potential consequences of deportation.[4] The landscape of immigration policy and practice has changed dramatically over the ensuing years making the need for safeguards even more pronounced.[5]
¶ 95. Currently, non-citizens are being deported in record numbers.[6] Reportedly, in the last eight years nearly two million people were deported. Of those, "[t]wenty percent — or about 394,000 — of the cases involved people convicted of serious crimes, including *567 drug-related offenses." Others may have committed only minor infractions, including traffic violations.[7] "Even long-term lawful permanent residents who have lived much of their lives in the United States are subject to immigration detention and deportation as a consequence of criminal arrest and conviction." Allegra M. McLeod, The U.S. Criminal-Immigration Convergence and Its Possible Undoing, 49 Am. Crim. L. Rev. 105, 113 (2012).
¶ 96. Commenting on the change in the immigration landscape, the United States Supreme Court observed how the changes have exacerbated the importance for non-citizens to be aware of the deportation consequences when entering a guilty plea:
The importance of accurate legal advice for non-citizens accused of crimes has never been more important. ... [D]eportation is an integral part — indeed, sometimes the most important part — of the penalty that may be imposed on non-citizen defendants who plead guilty to specified crimes.
Padilla v. Kentucky, 559 U.S. 356, 364 (2010).
¶ 97. The Padilla court focused on the obligation of a defense attorney under the Sixth Amendment to advise non-citizens about potential deportation consequences that arise from criminal convictions. Id. It determined that the absence of such advice may be the basis for a claim of ineffective assistance of counsel. Id. at 360.[8] It did not, however, address the obligation of the court when presiding over the plea of a non-citizen in a criminal proceeding.
*568 ¶ 98. In its first published post -Padilla decision, the Wisconsin Court of Appeals also referenced the severe consequences of deportation. State v. Mendez, 2014 WI App 57, 354 Wis. 2d 88, 847 N.W.2d 895. Describing the defendant, it noted that Mendez came to this country in 1997 when he was fourteen years old and never returned to Mexico. Id., ¶ 3. He is married to a United States citizen and together they have a four-year-old child who is a United States citizen. The court observed that "despite the benefit of a great reduction in the length of the potential prison sentence, a rational non-citizen defendant might have rejected a plea bargain and risked trial for the chance at avoiding deportation." Id., ¶ 16. Like Padilla, the Mendez court focused on the ineffective assistance of counsel claim and did not discuss the duty of a circuit court when accepting a guilty plea.
¶ 99. The importance of deportation warnings and the duty of a judge to give them was addressed recently by the New York Court of Appeals. People v. Peque, 3 N.E.3d 617 (2013). It commented that under contemporary law, a non-citizen's removal upon a felony conviction "is practically inevitable," and described this as an "enormous penalty upon non-citizen convicts," with wide-ranging consequences for life and liberty:
After being removed from the country, the defendant rarely, if ever, has further in-person contact with any *569 family members remaining in America. Additionally, deportation effectively strips the defendant of any employment he or she had in this country, thus depriving the defendant and his or her family of critical financial support.
Id. at 630-32. Accordingly, it determined that a court was required to inform a defendant of the possible deportation consequences of entering a guilty plea. Id. at 635.
¶ 100. Several states have legislation like Wisconsin's affirmatively requiring courts to take an active role in informing defendants of the possible deportation consequences of entering a guilty plea. See, e.g., Cal. Penal Code Ann. § 1016.5; Conn. Gen. Stat. § 54-lj; D.C. Code § 16-713; Fla. Rule Crim. Proc. 3.172(c)(8); Ga. Code Ann. § 17-7-93(c); Haw. Rev. Stat. Ann. § 802E-2; Iowa Rule Crim. Proc. 2.8(2)(b)(3); Mass. Gen. Laws, ch. 278, § 29D; Minn. Rule Crim. Proc. 15.01; Mont. Code Ann. § 46-12-210; N.Y. Crim. Proc. Law Ann. § 220.50(7); N.C. Gen. Stat. Ann. § 15A-1022; Ohio Rev. Code Ann. § 2943.031; Ore. Rev. Stat. § 135.385; R.I. Gen. Laws § 12-12-22; Tex. Code Crim. Proc. Ann., art. 26.13(a)(4); Vt. Stat. Ann., tit. 13, § 6565(c)(1); Wash. Rev. Code § 10.40.200.
¶ 101. This court has acknowledged that "by enacting Wis. Stat. § 971.08(l)(c) & (2), Wisconsin codified the protections contemplated in Padilla, but placed the duty to warn on the circuit court, rather than solely on the attorney." Negrete, 343 Wis. 2d 1, ¶ 33 n.12. By circumventing the remedy set forth in Wis. Stat. § 971.08(2), the majority minimizes the judge's duty and undermines the purpose of the statute.
*570 Ill
¶ 102. Our precedent interpreting the statute has strictly held circuit courts to the requirements in Wis. Stat. § 971.08. In State v. Douangmala, this court determined that Wis. Stat. § 971.08(2) means what it expressly states: if the defendant makes the required showing, "the circuit court 'shall' vacate the judgment and shall permit the defendant to withdraw the plea." 253 Wis. 2d 173, ¶ 31. The court explained that "[t]he word 'shall' in a statute is presumed to be mandatory unless a different construction is necessary to carry out the legislature's clear intent. Nothing in Wis. Stat. § 971.08 points to a different interpretation of the word 'shall' than an interpretation that the word signifies a mandatory act." Id.
¶ 103. Similarly, in Negrete, 343 Wis. 2d 1, ¶ 23, this court explained that the procedures required by Wis. Stat. § 971.08(2) are clear. All the defendant is required to show in order to withdraw a plea are the two elements enumerated in Wis. Stat. § 971.08(2):
To employ Wis. Stat. § 971.08(2) to withdraw his plea, however, the defendant's motion must first allege two facts: (1) that the circuit court "failfed] to advise [the] defendant [of the deportation consequences of the defendant's plea] as required by [§ 971.08(l)(c)]"; and (2) that the defendant's "plea is likely to result in the defendant's deportation, exclusion from admission to this country!,] or denial of naturalization."
Id., ¶ 23 (quoting Wis. Stat. § 971.08(2)).
¶ 104. Here, Romero-Georgana has shown what Negrete requires. He was not given the mandatory warning by the circuit court that a guilty plea could lead to his deportation and that he is now facing deportation. Under the governing statute, Wis. Stat. *571 § 971.08(2), that is all that Romero-Georgana needed to show in order to withdraw his plea. Douangmala, 253 Wis. 2d 173, ¶ 31.
¶ 105. I acknowledge that Romero-Georgana's pro se motion was on a form for Wis. Stat. § 974.06 motions. Perhaps this is why the majority was misled. However, the only citation to Wis. Stat. § 974.06 is in the form's preprinted labels on the first and second pages. Neither the text of the motion nor the attached affidavit makes any reference to a § 974.06 motion. Even the majority recognizes that "Romero-Georgana likely could have withdrawn his plea if he had timely brought a § 971.08(2) motion." Majority op., ¶ 66.
¶ 106. Nothing in Wis. Stat. § 971.08(2) or our precedent permits a reviewing court to ignore the circuit court's duty because of the defendant's failure to correctly label the motion. A defendant's action or inaction cannot alter the duty of the court under Wis. Stat. § 971.08(l)(c). Vang, 328 Wis. 2d 251, ¶ 14. Furthermore, under our precedent, Romero-Georgana's confusion in selecting the wrong label does not serve as a bar to his claim.
¶ 107. Wisconsin courts have a well-settled policy of liberally construing the pro se pleadings of prisoners to determine whether they contain a cause of action. State v. Love, 2005 WI 116, ¶ 29 n.10, 284 Wis. 2d 111, 700 N.W.2d 62 (quoting State ex rel. Terry v. Traeger, 60 Wis. 2d 490, 496, 211 N.W.2d 4 (1973)) ("[W]e must follow a liberal policy in judging the sufficiency of pro se complaints filed by unlettered and indigent prisoners."); State ex rel. L'Minggio v. Gamble, 2003 WI 82, ¶ 16, 263 Wis. 2d 55, 667 N.W.2d 1 ("At the outset, we note that it is well-settled that pro se complaints are to be liberally construed to determine if the complaint states any facts that can give rise *572 to a cause of action."); Lewis v. Sullivan, 188 Wis. 2d 157, 164, 524 N.W.2d 630 (1994) ("[P]ro se complaints of prisoners must be construed liberally in determining whether the stated facts give rise to a cause of action.").
¶ 108. This court has explicitly instructed courts to look to the contents of a pleading, not its label, to determine if the prisoner is entitled to relief:
We re-emphasize today what we have said previously. A court presented with a prisoner's pro se document seeking relief must look to the facts stated in the document to determine whether the petitioner may be entitled to any relief if the facts alleged are proved. Neither a trial nor an appellate court should deny a prisoner's pleading based on its label rather than on its allegations. If necessary the court should relabel the prisoner's pleading and proceed from there.
bin-Rilla v. Israel, 113 Wis. 2d 514, 521, 335 N.W.2d 384 (1983) (emphasis supplied).
¶ 109. In this case, Romero-Georgana filed his motion without the assistance of an attorney. The contents of the motion and attached affidavit relate to the circuit court's failure to inform him of the possible deportation consequences of his plea and the fact that he is now facing deportation.[9] The only citation to Wis. Stat. § 974.06 in the motion is in its pre-printed labels.
*573 ¶ 110. In an apparent attempt to deflect from the circuit court's and this court's failure to follow the clear statutory language, the majority lays blame on the back of the defendant who filed pro se the motion and the petition for review. It quotes in both text and footnote the comment of Romero-Georgana's attorney who was appointed after the petition for review was granted and who felt constrained by the order granting the petition which she interpreted as precluding her from raising a § 971.08(2) issue. Majority op., ¶ 67 and n.14.[10]
*574 ¶ 111. It is not the defendant's fault that the circuit court failed to give the statutorily mandated deportation warning. Wisconsin Stat § 971.08(l)(c) expressly provides that it is the duty of the circuit court to give it.
¶ 112. It is not the fault of the attorney appointed after the petition for review was granted that this court fails to follow the remedy mandated by the clear statutory language. Wisconsin Stat. § 971.08(2) expressly provides that if the preconditions are met, the remedy is "shall vacate . . . and permit the defendant to withdraw the plea . . . ."
¶ 113. A defendant's action or inaction does not relieve the circuit court of its duty to give the deportation warning. Nor does an attorney's action or inaction give license to this court to rewrite the words of a statute or circumvent the clearly mandated legislative remedy.
IV
¶ 114. I conclude that the language of Wis. Stat. § 971.08(2) is clear. If a defendant shows that the court did not advise him of the possible deportation consequences of a plea and that the defendant is likely to be deported as a result of his plea, the court "shall" vacate the sentence. Wis. Stat. § 971.08(2).
¶ 115. The statute includes no requirement that the defendant follow Wis. Stat. § 974.06 to obtain such relief. Its directive to the courts is mandatory and should be strictly construed. Accordingly, because the circuit court did not inform Romero-Georgana of the possible deportation consequences of his plea and he is now facing deportation, Wis. Stat. § 971.08(2) requires that he be permitted to withdraw his plea.
*575 ¶ 116. For the reasons set forth above, I respectfully dissent.
¶ 117. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 In its analysis, the majority extends the "clearly stronger" standard from State v. Starks, 2013 WI 69, 349 Wis. 2d 274, 833 N.W.2d 146. Majority op., ¶¶ 45-46. As I explained in my dissent to Starks, the "clearly stronger" standard is too rigid and cannot practically be applied in many situations. Starks, 349 Wis. 2d 274, ¶¶ 94, 98-102 (Bradley, J., dissenting). The standard runs counter to United States Supreme Court precedent, which has declined to adopt bright-line standards for evaluating deficiency. Cullen v. Pinholster, 131 S. Ct. 1388, 1406 (2011). Further, it is inconsistent with Strickland v. Washington, 466 U.S. 668, 695 (1984), which requires *564 an evaluation of the reasonableness of an attorney's performance under the totality of the circumstances.
Although the "clearly stronger" is one factor to consider in applying Strickland, it is not the test. There are many situations in which the standard will prove unworkable. This case is one of those situations. Given that it appears the defendant would have been successful in both the resentencing motion and the Wis. Stat. § 971.08(2) motion, a court cannot determine whether his postconviction representation was deficient without considering whether she adequately informed Romero-Georgana of his options and what, if anything, Romero-Georgana asked her to do on his behalf.

 The majority attempts to justify its timeliness argument by referencing in a footnote the legislative history of Wis. Stat. § 971.08. Majority op., ¶ 67 n.14. It observes that in 1983 the statute was amended to eliminate a 120-day time limit for filing motions to withdraw under Wis. Stat. § 971.08(1) because those claims could be brought under Wis. Stat. §§ 809.30, 974.02, or 974.06. Contrary to the majority's suggestion, the 1983 amendment provides no illumination to our analysis because it predates the enactment of the current Wis. Stat. § 971.08(2). It was not until 1985 that the legislature mandated the deportation warning along with its required remedy. As discussed above, its very language suggests that no time limit was intended.

 The drafting files to Wis. Stat. § 971.08 note that the enactment of similar legislation in other states "go[es] a long way to alleviate the hardship and unfairness involved when an alien unwittingly pleads guilty or nolo contendere to a charge without being informed of the immigration consequences of such a plea." Drafting files, 1985 Wis. Act 252, on file with the Wis. Legislative Reference Bureau.

 The changes in the legal landscape are discussed in Vivian Chang, Where Do We Go from Here: Plea Colloquy Warnings and Immigration Consequences Post-Padilla, 45 U. Mich. J.L. Reform 189, 193 (2011).

 DHS Office of Immigration Statistics Annual Report: "Immigration Enforcement Actions: 2012," available at http://www.dhs.gov/sites/default/files/publications/ois _enforcement_ar_2012_1 .pdf.

 Ginger Thompson, More Deportations Follow Minor Crimes, Records Show, New York Times, Apr. 6, 2014.

 The court observed:
*568 Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. ... But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.
Padilla, 559 U.S. at 369.

 The motion states:
Romero-Georgana is a native of Mexico and is not a citizen of the United States of America. Romero-Georgana contends that the trial court failed to advise him that if he pleas no contest he may be deported.
Romero-Georgana pled no contest to one count of first degree sexual assault of a child. Romero-Georgana did through the use of the Plea Questionnaire/Waiver of Rights form verify that he did understand the question regarding deportation. However, *573 Romero-Georgana contends that at the time he completed the Plea Questionnaire/Waiver of Rights Form that he did not fully understand what he was initialing due to his limited English skills, poor quality of interpreters being employed by his attorney at the time, and the failure of counsel to advise him of the consequences. Romero-Georgana contends that had he known he would be deported upon entering the no contest plea he would have instead entered a plea of not guilty and went to trial.
At no time did the court during the plea colloquy (Plea Hearing Transcripts dated November 17, 2006, pages 2-4) advise RomeroGeorgana of the deportation consequences of his entering a plea of no contest. Again, Romero-Georgana contends he would not have entered a plea of no contest had he fully understood he would have been deported.
To verify that Romero-Georgana is indeed facing deportation back to his native land of Mexico he submits the Immigration Detainer-Notice of Action Form File #A097-838-176, dated March 20, 2007. (Exhibit 1)

 At oral argument Romero-Georgana's attorney stated "[a]s this court knows we were appointed .. . after the petition for review was filed and the case had been decided up to that point under 974.06." The attorney further stated "[t]his court's order granting review specifically asked us to stay within the arguments made in the petition for review, and that did not include an argument that this case should be decided as a 971.08(2) motion by itself."