STATE of Wisconsin, Plaintiff-Respondent,

v.

Saul R. LOPEZ, Defendant-Appellant.†

Court of Appeals

No. 94–2396. *Submitted on briefs August 22, 1995.—Decided September. 6, 1995.*

(Also reported in 539 N.W.2d 700.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   Saul R. Lopez, a citizen of Mexico, pled no contest to a charge of first-degree reckless injury. However, he was not advised by the trial court that his no contest plea could result in his deportation from the United States as is required by § 971.08(1)(c), STATS. Lopez later sought to withdraw his plea due to this omission. The trial court acknowledged the error but, after hearing testimony from Lopez's trial counsel that Lopez knew of the potential for deportation, found the error harmless. Lopez admits that *State v. Chavez*, 175 Wis. 2d 366, 371, 498 N.W.2d 887, 889 (Ct. App.

1993), and *State v. Issa,* 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994), allow a trial court to go outside the plea hearing record and determine the error to be harmless. However, he claims that *State v. Baeza,* 174 Wis. 2d 118, 496 N.W.2d 233 (Ct. App. 1993), expressly conflicts with *Chavez* and *Issa* and asks us to reconcile the conflict in his favor. We reject Lopez's assertions that the cases are irreconcilable. The procedure employed by the trial court was sound and we affirm.

Lopez was born and raised in Mexico City, Mexico. He came to the United States sometime in 1988 and moved to Racine approximately a year and a half later. Lopez was charged with first-degree reckless injury while armed with a dangerous weapon and was bound over for trial after a preliminary hearing. At his arraignment, the trial court was informed that Lopez was not a citizen of the United States. Subsequently, Lopez pleaded no contest to the crime as charged. At no time during the plea hearing did the trial court follow the mandate of § 971.08(1)(c), Stats., which states that the trial court shall:

> Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

Lopez was eventually sentenced to twelve years in prison.

Thereafter, Lopez filed a motion seeking to withdraw his plea, claiming that the trial court erred in failing to address him as required under § 971.08(1)(c), Stats. He contended that the sole remedy for the fail-

ure was provided in § 971.08(2), which states as follows:

> If a court fails to advise a defendant as required by sub. (1) (c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

There was no dispute that Lopez was conclusively presumed to be deportable.

The State admitted there was error, but sought to overcome the deficient plea hearing record by introducing testimony from Lopez's former trial counsel that prior to the plea hearing he had warned Lopez of the potential deportation consequences of his plea. Lopez objected to the State's attempt to use information from outside the plea hearing record and argued that the plain language of § 971.08(2), STATS., and this court's decision in *Baeza* required that review of his claim be restricted to the record made at the plea hearing. The trial court disagreed and permitted trial counsel to testify concerning his conversations with Lopez.

Trial counsel testified that he met with Lopez for about an hour on a Sunday prior to the plea hearing. During the meeting, Lopez was advised of the possibility that he might be deported if he were to enter a no contest plea to the charge. Trial counsel also testified that he went over the plea questionnaire line by line with Lopez, including the paragraph that warns the accused about the possibility of deportation. Trial

counsel averred that he read the questionnaire out loud in Spanish and Lopez initialed each line as they went along.

At the conclusion of the testimony, the trial court acknowledged that it erred in failing to advise Lopez of the potential deportation consequences of his plea. The trial court found, however, that Lopez had nonetheless entered his plea with an understanding of the potential for deportation based upon trial counsel's testimony and the plea questionnaire. Lopez then appealed to this court.

■

The focus of Lopez's complaint is that the trial court permitted the State to elicit postconviction testimony from his trial counsel. Lopez argues that the State may not supplement the defective plea hearing language because to do so would violate the plain language of § 971.08(2), STATS., and this court's decision in *Baeza*. The State responds that the statute does not prohibit the procedure employed by the trial court and, in fact, two decisions of this court after *Baeza* explicitly validate the procedure. The issue is therefore one of law because it involves the construction of a statute and prior decisions of this court. *See State v. Hufford,* 186 Wis. 2d 461, 464, 522 N.W.2d 26, 27 (Ct. App. 1994).

Lopez argues that permitting the State to belatedly supplement the plea hearing record renders the unique, specific remedy adopted by the legislature in § 971.08(2), STATS., mere surplusage. He concedes that we can read the very argument he now makes to have been expressly rejected in *Chavez*, and later in *Issa*, but counters that the *Chavez* and *Issa* opinions are themselves contrary to our *Baeza* decision, which in Lopez's view upholds his understanding of the statute.

729

Following is a capsulization of Lopez's contention: § 971.08(2), STATS., provides the sole remedy for violation of the deportation colloquy required under § 971.08(1)(c). The sole determinant of whether there has been a violation of the deportation colloquy is the plea hearing record itself. This is clear from the plain reading of the statute which looks solely to the plea hearing record. The State may not, therefore, use any evidence outside the plea hearing record to show other means by which the accused gained knowledge of potential deportation consequences. Use of testimony outside the plea hearing record is *"Bangert* style" evidence, first set forth in *State v. Bangert,* 131 Wis. 2d 246, 281-83, 389 N.W.2d 12, 29-30 (1986). The *Baeza* court expressly rejected use of *"Bangert* style" evidence in its decision. *See Baeza,* 174 Wis. 2d at 125-26, 496 N.W.2d at 236. Therefore, any *"Bangert* style" evidence brought under the guise of a harmless error analysis is contrary to *Baeza.* To the extent that *Chavez* and *Issa* can be read to allow what *Baeza* clearly does not allow, the cases are irreconcilable and we should reaffirm our holding in *Baeza.*

This panel of the court wrote *Baeza* and we know what we said. We did not say what Lopez claims we said. Baeza's claim had to do with burden shifting. It was Baeza's idea that when a judge omits giving a deportation colloquy, the defendant has two alternative remedies. *See Baeza,* 174 Wis. 2d at 123, 496 N.W.2d at 235. The defendant can seek the remedy outlined in § 971.08(2), STATS., which requires withdrawal of the plea upon a showing that deportation is "likely." *See Baeza,* 174 Wis. 2d at 123, 496 N.W.2d at 235. Alternatively, the defendant can make a prima facie case under § 971.08(1)(c). Then, just like a *Bangert* analysis, the burden shifts to the State to

prove that the omission did not occur. *See Baeza*, 174 Wis. 2d at 123, 496 N.W.2d at 235. If the State fails in its burden, the defendant may be allowed to withdraw his or her plea without having to prove that deportation is "likely," an element that the defendant would otherwise have to prove using the remedy provided in § 971.08(2). *See Baeza*, 174 Wis. 2d at 123, 496 N.W.2d at 235. The alternative remedy theory was undoubtedly presented to this court because the likelihood of Baeza's deportation was a close question in that case.

We wrote that the burden shifting announced in *Bangert* was not meant to apply to violations of § 971.08(1)(c), STATS. *See Baeza*, 174 Wis. 2d at 127, 496 N.W.2d at 236. We held that a defendant's only alternative is to seek withdrawal of the plea pursuant to § 971.08(2). Our reference to *Bangert* had nothing to do with whether evidence outside the plea hearing record can be admitted at a postconviction hearing to determine whether the omission of a deportation colloquy was harmless. In fact, we never addressed harmless error or whether a harmless error analysis was even appropriate. Frankly, the issue was never before us.

The issue *was* before the *Chavez* and *Issa* courts. In *Chavez*, in particular, the defendant argued that there can be no harmless error analysis because the statute provides no such avenue. *See Chavez*, 175 Wis. 2d at 369-70, 498 N.W.2d at 888. The *Chavez* court held that the statute was ambiguous, looked to the legislative history, found that the statute was designed to protect those who "unwittingly" plead no contest or guilty without knowing the deportation potential, and that if a defendant knows of the potential even though not given the statutory colloquy, the error can be harmless. *See id.* at 370-71, 498 N.W.2d at 888-89. Regarding what evidence may be used to show harm-

731

less error, the *Chavez* court observed that the record showed Chavez's awareness of the likelihood of deportation when he entered his plea. The court then wrote: "Chavez concedes that the state may generally overcome a failure to comply with the plea requirements of § 971.08(1) by showing evidence that the defendant knew and understood the necessary information to render his plea voluntary and knowing." *Chavez*, 175 Wis. 2d at 369, 498 N.W.2d at 888 (citing *Bangert*, 131 Wis. 2d at 274, 384 N.W.2d at 26).

In our view, the *Chavez* court not only sanctioned the harmless error analysis, but allowed evidence outside the plea hearing record as was first recognized in *Bangert*. Our decision in *Baeza* never reached that issue. Our discussion of *Bangert* was solely in relation to Baeza's argument, not in relation to whether evidence outside the plea hearing record may be used to show harmless error. In fact, the only similarity between *Baeza, Chavez* and *Issa* is that the name "Bangert" was prominently displayed. The *Baeza, Chavez* and *Issa* decisions are in every way compatible and in no way irreconcilable.

Here, the trial court employed the procedure accepted in *Chavez* and the finding of harmless error is affirmed.

*By the Court.*—Judgment and order affirmed.