# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP2041-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>            Plaintiff-Respondent-Petitioner,<br>      v.<br>Jose Alberto Reyes Fuerte,<br>            Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 372 Wis. 2d 106, 887 N.W.2d 121
PDC No:  2016 WI App 78 - Published

| | |
|---|---|
| OPINION FILED: | December 19, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 5, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Columbia |
|   JUDGE: | Alan J. White |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J. dissents, joined by A.W. BRADLEY, J. (opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Nancy A. Noet*, assistant attorney general, and *Brad D. Schimel*, attorney general.  There was an oral argument by *Lisa E.F. Kumfer*, assistant attorney general.

For the defendant-appellant there was a brief filed by *Ben M. Crouse* and *Sesini Law Group*, *S.C.*, Milwaukee.  There was an oral argument by *Ben M. Crouse.*

**2017 WI 104**

No. 2015AP2041-CR
(L.C. No. 2012CF582)

STATE OF WISCONSIN        :      IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**State of Wisconsin,**

       **Plaintiff-Respondent-Petitioner,**

       **v.**

**Jose Alberto Reyes Fuerte,**

       **Defendant-Appellant.**

**FILED**

**DEC 19, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals that reversed the Columbia County Circuit Court's[1] order denying Jose Alberto Reyes Fuerte's ("Reyes Fuerte") motion to withdraw two guilty pleas for two separate criminal violations. The motions for withdrawal were made pursuant to Wis. Stat. § 971.08(2) (2013-14).[2] State v. Reyes Fuerte, 2016 WI App 78, 372 Wis. 2d 106, 887 N.W.2d 121.

---

[1] The Honorable Alan J. White presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

¶2 The State argues that motions to withdraw a guilty plea pursuant to Wis. Stat. § 971.08(2) should be subject to harmless error analysis pursuant to Wis. Stat. §§ 971.26 and 805.18, and thus this court should overrule its decision in State v. Douangmala, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1. The State asks this court to remand this matter to the circuit court for a Bangert[3] hearing in order to determine whether Reyes Fuerte knew of the potential immigration consequences of his plea at the time of the plea hearing.

¶3 We hold that Douangmala was objectively wrong because it failed to properly consider the harmless error statutes, Wis. Stat. §§ 971.26 and 805.18, and is thus overruled. Applying harmless error analysis, we further hold that the circuit court's error in this case was harmless as a matter of law and thus reverse the decision of the court of appeals.

¶4 We begin with a description of the facts and procedural history. We then set forth the standard of review. We begin our analysis by setting forth the decisions of this court and the court of appeals considering the applicability of Wis. Stat. §§ 971.26 and 805.18 to Wis. Stat. § 971.08(2). We follow with our conclusion that Douangmala was wrongly decided because harmless error analysis does apply to § 971.08(2). Finally, we conclude that the circuit court's error in this case was harmless.

---

[3] State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶5 Reyes Fuerte entered guilty pleas on February 20, 2014, to two charges: (1) attempting to flee or elude a traffic officer, contrary to Wis. Stat. § 346.04(3), and (2) second-offense operating with a restricted controlled substance in his blood, contrary to Wis. Stat. §§ 346.63(1)(am) and 346.65(2)(am)2. At the plea hearing, the circuit court gave the following advisement regarding the potential immigration consequences of Reyes Fuerte's plea:

> Usually we're looking at felonies, but any conviction to a person who is not a resident of the United States could lead, at some point in the future, to that person either being denied re-entry or that person being required to leave this country. And I'm not saying that's going to happen at all. I'm just saying that convictions can lead to those results.

Reyes Fuerte confirmed, through an interpreter, that he understood the circuit court's advisement. Reyes Fuerte was also alerted to the potential immigration consequences of his plea in the Plea Questionnaire/Waiver of Rights form, which was in English and Spanish. Further, defense counsel was bilingual, and stated on the record that he also went over the form in Spanish with Reyes Fuerte.

¶6 At all times relevant to this case, Reyes Fuerte was in the United States illegally and spoke Spanish as his first language. At the time of his plea, Reyes Fuerte was in the

3

midst of deportation[4] proceedings. He asserted cancellation of removal as a defense in those proceedings. Cancellation of removal allows the United States Attorney General to cancel removal and grant lawful permanent residence to aliens fulfilling certain criteria. 8 U.S.C. § 1229b(b)(1). One of those criteria is that the alien has not been convicted of a crime of moral turpitude. 8 U.S.C. § 1229b(b)(1)(C) (citing 8 U.S.C. § 1227(a)(2)(A)(i)). At the time of Reyes Fuerte's plea, whether either or both of his convictions were for crimes of moral turpitude was unclear.

¶7 The United States Court of Appeals for the Seventh Circuit resolved any ambiguities late in 2014. Cano-Oyarzabal v. Holder, 774 F.3d 914, 919 (7th Cir. 2014). In Cano-Oyarzabal, the court affirmed a determination by the Board of Immigration Appeals that Wis. Stat. § 346.04(3), attempting to flee or elude a traffic officer, is a crime of moral turpitude. Id. Thus, Reyes Fuerte was no longer eligible for the cancellation of removal defense.

¶8 Reyes Fuerte moved to withdraw his plea pursuant to Wis. Stat. § 971.08(2) in June 2015, alleging that the circuit court's immigration consequences advisement was defective and Reyes Fuerte's guilty plea resulted in losing the cancellation of removal defense. The circuit court denied the motion because

---

[4] Federal immigration law uses the term "removal" to describe the process traditionally known as "deportation." We use those terms interchangeably in this opinion.

it found the immigration consequences advisement substantially complied with the statute under State v. Mursal, 2013 WI App 125, 351 Wis. 2d 180, 839 N.W.2d 173. Reyes Fuerte appealed.

¶9 The court of appeals reversed, holding that the circuit court's immigration consequences advisement did not substantially comply with Wis. Stat. § 971.08(1)(c). Reyes Fuerte, 372 Wis. 2d 106, ¶23. The court of appeals identified two substantial deviations from the language of the statute. Id., ¶17. First, the circuit court used the term "resident" rather than "citizen." Id., ¶18. This difference was substantial to the court of appeals because each term has a separate and distinct meaning under federal immigration law. Id. United States citizens do not face any immigration or citizenship consequences for their crimes. Id. Conversely, residents of the United States who are not citizens, even those in the country legally, may suffer adverse immigration consequences. Id., ¶19.

¶10 Second, the circuit court made no mention of "denial of naturalization," one of the three warnings required by Wis. Stat. § 971.08(1)(c). Id., ¶22. Though Reyes Fuerte was not concerned with denial of naturalization at the moment—naturalization would be possible only if Reyes Fuerte was not deported and was granted legal status at some point—the court of appeals rejected the State's argument that the omission of this warning was irrelevant because such a finding would constitute harmless error analysis, which this court prohibited in State v.

5

Douangmala, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1. Id., ¶23.

¶11 Next, the court of appeals held that, under the second prong of Wis. Stat. § 971.08(2), Reyes Fuerte had successfully alleged that his plea was "likely" to result in deportation because the cancellation of removal defense was no longer available. Id., ¶41. The court of appeals then remanded to the circuit court for a hearing to determine whether Reyes Fuerte would have fulfilled the requirements for the cancellation of removal defense except for his guilty plea in this case. Id., ¶42.

¶12 The State petitioned this court for review, which we granted on January 18, 2017.

## II. STANDARD OF REVIEW

¶13 This court reviews motions to withdraw guilty pleas after sentencing in one of two ways, known as the Bentley standard and the Bangert standard. State v. Negrete, 2012 WI 92, ¶¶16, 19, 343 Wis. 2d 1, 819 N.W.2d 749.

¶14 Under the Bentley standard, the reviewing court first determines whether the motion "alleges sufficient material facts that, if true, would entitle the defendant to relief." Id., ¶17 (citing State v. Allen, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433). See also State v. Bentley, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). If sufficient facts are alleged, the court then looks to the record to determine whether an evidentiary hearing is required. Negrete, 343 Wis. 2d 1, ¶17 n.6. An evidentiary hearing is required if the record is

insufficient to determine whether the defendant is entitled to relief. Id. Conversely, no hearing is required if the record "conclusively demonstrates" that the defendant is not entitled to relief, even if the motion alleges sufficient facts. Id., ¶17. These determinations are questions of law reviewed de novo. Id.

¶15 If the motion does not allege sufficient facts that, if true, would entitle the defendant to relief, then the decision to grant an evidentiary hearing is discretionary. Id., ¶18. As such, this court reviews the decision for an erroneous exercise of discretion. Id.

¶16 Under the Bangert standard, defendants may shift the burden of proof to the State when: "(1) the defendant can point to a plea colloquy deficiency evident in the plea colloquy transcript, and (2) the defendant alleges that he did not know or understand the information that should have been provided in the colloquy." Id., ¶19 (citing State v. Bangert, 131 Wis. 2d 246, 274-75, 389 N.W.2d 12 (1986)). This court applies de novo review to both elements: whether the colloquy is sufficient and whether an evidentiary hearing is required. Id.

¶17 We apply the Bangert standard in this case because Reyes Feurte can point to a defect in the plea colloquy transcript and Reyes Fuerte has alleged that he was unaware of the immigration consequences of his plea. Therefore, we review the sufficiency of the colloquy and the necessity of an evidentiary hearing de novo. Id.

7

¶18 This case also requires us to interpret Wis. Stat. §§ 971.08, 971.26, and 805.18. Statutory interpretation is an issue of law we review de novo. State v. Ozuna, 2017 WI 64, ¶9, 376 Wis. 2d 1, 898 N.W.2d 20. However, when a party asks this court to overrule one of its prior decisions interpreting a statute, as the State asks us to do in this case, we do not interpret the statute de novo. Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶46, 281 Wis. 2d 300, 697 N.W.2d 417. Rather, the party seeking we overturn a prior statutory interpretation must show that the prior interpretation was "objectively wrong" and thus the court has a "compelling reason to overrule it." Id., ¶45 (quoting Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405).

## III. DISCUSSION

¶19 Before we begin our analysis, we take a moment to remind circuit court judges that simply reading the language of the advisement from Wis. Stat. § 971.08(1)(c) is by far the best option. The use of quotation marks (such as those in § 971.08(1)(c)) is "an unusual and significant legislative signal" that should be given effect by circuit courts. State v. Garcia, 2000 WI App 81, ¶16, 234 Wis. 2d 304, 610 N.W.2d 180. In this instance, those quotation marks are best given effect by reading the advisement as written in the statute. See id. Though, as a result of this opinion, harmless error now applies as a "safety net" for circuit courts, the best practice remains reading the exact language of the statute. Id.

8

¶20 Our analysis first discusses the three statutes at issue and how Wisconsin courts previously construed them. We next discuss why Douangmala was wrongly decided and why we overrule it. Finally, we apply the harmless error analysis to this case and hold that the circuit court's errors were harmless.

A. Statutory Background

¶21 This case requires us to consider the interplay of three statutes: Wis. Stat. §§ 971.08, 971.26, and 805.18. Section 971.08(1)(c) requires a circuit court to, before accepting a plea of guilty or no contest:

> Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

Wis. Stat. § 971.08(1)(c). The next subsection then provides a remedy if the circuit court fails to give the required advisement:

> If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

Wis. Stat. § 971.08(2). This court has construed § 971.08(2) to require defendants prove two elements in order to withdraw their

9

pleas: (1) the circuit court failed to give the immigration advisement to the defendant as required by § 971.08(1)(c), and (2) the plea is "likely" to result in deportation, exclusion from admission, or denial of naturalization. State v. Valadez, 2016 WI 4, ¶28, 366 Wis. 2d 332, 874 N.W.2d 514.

¶22 Wisconsin Stat. §§ 971.26 and 805.18 serve as savings clauses for judgments affected by harmless errors. Section 971.26 applies exclusively to criminal actions:

> No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant.

Wis. Stat. § 971.26. Section 805.18 is part of the civil procedure code, but is made applicable to criminal actions by Wis. Stat. § 972.11(1), and states:

> (1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.
>
> (2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

Wis. Stat. § 805.18.

¶23 Prior to this court's decision in Douangmala, Wisconsin courts applied harmless error analysis to motions to

withdraw pleas pursuant to Wis. Stat. § 971.08(2). E.g., State v. Chavez, 175 Wis. 2d 366, 371, 498 N.W.2d 887 (Ct. App. 1993). See also Douangmala, 253 Wis. 2d 173, ¶¶33-40 (discussing Chavez and its progeny). The Chavez court noted that the intersection of Wis. Stat. §§ 971.08(2) and 971.26[5] created an ambiguity because both statutes use mandatory language with seemingly contradictory commands. Chavez, 175 Wis. 2d at 370-71. The court of appeals then utilized legislative history[6] to hold that the legislature intended to protect only "an alien [who] unwittingly pleads guilty or no contest . . . without being

---

[5] Chavez did not consider Wis. Stat. § 805.18. State v. Chavez, 175 Wis. 2d 366, 370-71, 498 N.W.2d 887 (Ct. App. 1993).

[6] This legislative history consists of an article attached to the drafting request by Senator John Norquist that stated statutes like section 971.08 help "alleviate the hardship and unfairness involved when an alien unwittingly pleads guilty or nolo contendere to a charge without being informed of the immigration consequences of such a plea." (Emphasis added) This language never made it into the Legislative Reference Bureau analysis that was ultimately distributed with the draft bill to the entire legislature.

The State uses the same legislative history in its argument in the present matter, but we do not need the legislative history because we are tasked with giving effect to what the legislature enacted, not necessarily what it intended. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Nonetheless, we are inclined to agree with the Chavez court that "the legislature did not intend a windfall to a defendant who was aware of the deportation consequences of his plea," 175 Wis. 2d at 371, though we emphasize that we resolve this case based solely on the plain meaning of all statutes involved.

informed of the consequences of such a plea." Id. at 371. Thus, harmless error could apply where the defendant otherwise knew (i.e., was not "unwitting") about the consequences of the plea. Id.

¶24 This court rejected Chavez's conclusion in Douangmala, instead holding that the legislative history merely indicated that the legislature said what it intended to: if all conditions of Wis. Stat. § 971.08(2) are met, then the court must vacate the judgment. Douangmala, 253 Wis. 2d 173, ¶31. The Douangmala court found it highly relevant that the mention of aliens who unwittingly enter a guilty or no-contest plea was contained solely in the drafting file, which not all legislators see. Id., ¶¶28-29.

¶25 Further, the court noted that Wis. Stat. § 971.08(2) uses mandatory "shall" language. Id., ¶31. Thus, the court held that harmless error does not apply because the legislature's use of mandatory language in effect precluded harmless error analysis. Id., ¶42.

B. Douangmala failed to harmonize the interplay between Wis. Stat. §§ 971.08, 971.26, and 805.18.

¶26 This court set out the basic method for statutory interpretation in State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. See also Daniel R. Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969, 970 (2017). Where the meaning of a statute is plain based on the language of the statute, analysis ends there. Kalal, 271 Wis. 2d 633, ¶45. As part of our plain language

12

analysis, we must consider the statute's context as well. Id., ¶46. This means we read "statutory language . . . not in isolation, but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ." Id. Accordingly, analyzing Wis. Stat. § 971.08(2) in a vacuum is improper, and we must view it in light of its related statutes. In this instance, that means we must read § 971.08(2) in light of the statutory savings clauses in Wis. Stat. §§ 971.26 and 805.18.

¶27 Though many decisions parrot Kalal's language that statutes are to be interpreted "in relation to the language of surrounding or closely-related statutes," id., few provide any definition of "closely-related." Statutes are closely related when they are in the same chapter, reference one another, or use similar terms. City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶24, 302 Wis. 2d 599, 734 N.W.2d 428 (interpreting "comparable replacement property" in Wis. Stat. § 32.05(8)(b)-(c) in light of Wis. Stat. § 32.19). Being within the same statutory scheme may also make two statutes closely related. State v. Scruggs, 2017 WI 15, ¶24, 373 Wis. 2d 312, 891 N.W.2d 786 (considering a statute's presence in criminal sentencing statutes as part of its context, but ultimately concluding that other context took precedence in that case); cf Homeward Bound Servs. v. Office of the Ins. Comm'r, 2006 WI App 208, ¶34, 296 Wis. 2d 481, 724 N.W.2d 380 (considering Wis. Stat. chs. 600-655 closely related because they are a

13

comprehensive statutory scheme intended to "ensure that policy holders are treated fairly.").

¶28 We conclude that Wis. Stat. §§ 971.08, 971.26, and 805.18 are closely related, and thus must be construed together, because they all appear in the same statutory scheme. See id. Sections 971.08 and 971.26 are in the same chapter, which strongly indicates they are related and should be construed together. CC Midwest, 302 Wis. 2d 599, ¶24. Additionally, though § 805.18 is not in the same chapter, Wis. Stat. § 972.11(1) incorporates § 805.18 for use in criminal cases, and § 972.11 is part of the criminal code. Chapters 971 and 972 both deal with criminal procedure; chapter 971 generally governs pre-trial procedures while chapter 972 governs trial procedure. Thus, chapters 971 and 972 are related as part of the same statutory scheme. See Homeward Bound Servs., 296 Wis. 2d 481, ¶34. Finally, this court acknowledged post-Douangmala that reading § 971.08(2) in light of § 971.26 is "reasonable." State v. Lagundoye, 2004 WI 4, ¶26 n.17, 268 Wis. 2d 77, 674 N.W.2d 526 (stating "[b]oth statutes concern when a defendant may be relieved of a judgment based on a defect in the proceedings" in deciding whether Douangmala had retroactive effect).

¶29 Where multiple statutes are at issue, this court seeks to harmonize them through a reasonable construction that gives effect to all provisions. State v. Delaney, 2003 WI 9, ¶13, 259 Wis. 2d 77, 658 N.W.2d 416. Where conflict between statutes is unavoidable, specific statutes take precedence over general

14

statutes. Rouse v. Theda Clark Med. Ctr., 2007 WI 87, ¶37, 302 Wis. 2d 358, 735 N.W.2d 30.

¶30 We hold that the State has met its high burden of showing that this court's decision in Douangmala was "objectively wrong." See Romanshek, 281 Wis. 2d 300, ¶45. Douangmala made no attempt to harmonize Wis. Stat. §§ 971.08(2) and 971.26. See Douangmala, 253 Wis. 2d 173, ¶¶32-33. While the decision makes mention of § 971.26, it did not analyze how it applied in that case. Id., ¶42. Rather, Douangmala overruled Chavez and its progeny based on Chavez's reliance on the legislative history that the court found unpersuasive and the use of the mandatory "shall" in § 971.08(2) rather than independently analyzing the interplay between the statutes. Id.[7]

---

[7] Navigating the reasoning in Douangmala is a challenge in and of itself. The court first held that the use of "shall" indicated an intent that withdrawal be mandatory, contrary to the legislative history proffered by the State:

> The legislative history therefore persuades us that the legislature intended what the statute explicitly states. Section 971.08(2) states that if the conditions set forth therein are met (and they were in the present case), the circuit court "shall" vacate the judgment and shall permit the defendant to withdraw the plea. The word "shall" in a statute is presumed to be mandatory unless a different construction is necessary to carry out the legislature's clear intent. Nothing in Wis. Stat. § 971.08 points to a different interpretation of the word "shall" than an interpretation that the word signifies a mandatory act.

State v. Douangmala, 2002 WI 62, ¶31, 253 Wis. 2d 173, 646 N.W.2d 1 (footnotes omitted).

(continued)

15

¶31 Douangmala's analysis suffers a fatal flaw in this regard: both of the harmless error savings statutes also use the mandatory "shall" language. Wis. Stat. § 971.26 ("[N]or shall the . . . judgment . . . be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant.") (emphasis added); Wis. Stat. § 805.18 ("(1) The court shall, in every stage of action, disregard any error or defect in the pleadings or proceedings which shall not affect

---

The court then mentions Wis. Stat. § 971.26, but proceeds to discuss Chavez and its progeny. Douangmala, 253 Wis. 2d 173, ¶32-40. The analysis section concludes with the court overruling Chavez, 175 Wis. 2d 366, State v. Issa, 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994), State v. Lopez, 196 Wis. 2d 725, 539 N.W.2d 700 (Ct. App. 1995), and State v. Garcia, 2000 WI App 81, 234 Wis. 2d 304, 610 N.W.2d 180:

> The principle of stare decisis is applicable to the decisions of the court of appeals. Stare decisis requires us to abide by precedent established by the court of appeals unless a compelling reason exists to overrule the precedent. The principle of stare decisis does not, however, require us to adhere to interpretations of statutes that are objectively wrong. That the legislature has not taken action with respect to a statute that a court has construed is entitled to some weight in determining legislative intent, but it is not conclusive. As we have explained, we conclude that the Chavez harmless-error interpretation of Wis. Stat. § 971.08(2) is objectively wrong under the language of the statute. Accordingly, we overrule Chavez, Issa, Lopez, and Garcia to the extent that these cases hold that harmless-error principles apply to a defendant who satisfies the conditions set forth in § 971.08(2).

Douangmala, 253 Wis. 2d 173, ¶42 (footnotes omitted). Nowhere does the court analyze Wis. Stat. § 971.26 outside of the context of Chavez.

the substantial rights of the adverse party.  (2) No judgment shall be reversed or set aside . . . unless in the opinion of the court to which the application is made . . . the error complained of has affected the substantial rights of the party seeking to reverse . . . .") (emphasis added).  We agree with Douangmala that "[t]he word 'shall' in a statute is presumed to be mandatory" and "[n]othing in Wis. Stat. § 971.08 points to a[n] . . . interpretation [other] than that the word signifies a mandatory act."  Douangmala, 253 Wis. 2d 173, ¶31.  More particularly, we agree this analysis is true as far as it goes; however, this analysis is incomplete in that it ignores the presence of "shall" in Wis. Stat. §§ 971.26 and 805.18.

¶32 We hold that Wis. Stat. §§ 971.08(2), 971.26, and 805.18 are most comprehensibly harmonized by applying harmless error analysis.  All of the relevant statutes use "shall," and, accordingly, none is "more mandatory" than any other.  We emphasize that applying harmless error analysis does not facially violate § 971.08(2), but failing to apply harmless error analysis does facially violate §§ 971.26 and 805.18.

¶33 Further, harmless error was plainly codified in the two statutes ignored by Douangmala that we harmonize today, long before Wis. Stat. § 971.08(2) was enacted into law.  Wisconsin Stat. § 971.26 was enacted in its current form in 1969, though the concept goes back much further.  See § 63, ch. 255, Laws of 1969; Flynn v. State, 97 Wis. 44, 47, 72 N.W. 373 (1897) (referencing "harmless error").  When Wisconsin Stat. § 971.08(2) was created in 1986, the legislature was well aware

17

of the concept of harmless error in criminal proceedings. 1985 Wis. Act 252, §§ 3-4; see Villa Clement, Inc. v. National Union Fire Ins. Co., 120 Wis. 2d 140, 147, 353 N.W.2d 369 (Ct. App. 1984) (presuming the legislature is aware of pre-existing statutes).

¶34 Our holding is consistent with how federal courts review imperfect immigration advisements in plea colloquies.[8] Before 2013, federal courts were not required to give any sort of immigration advisement. See United States v. Matamula, 788 F.3d 166, 174 (5th Cir. 2015). The Federal Rules of Criminal Procedure were amended, effective December 1, 2013, to require federal courts to give an immigration advisement substantially identical to that of Wis. Stat. § 971.08(1)(c) before accepting a guilty or no contest plea.[9] Id.; Fed. R. Crim. P. 11(b)(1)(O).

---

[8] "Federal cases are persuasive guides to the construction of state law when state and federal provisions are similar . . . ." State v. Brady, 118 Wis. 2d 154, 157 n.1, 345 N.W.2d 533 (Ct. App. 1984). Cf State v. Cardenas-Hernandez, 219 Wis. 2d 516, 527-28, 579 N.W.2d 678 (1998) ("Wisconsin courts look to federal cases interpreting and applying the federal rules of evidence as persuasive authority" where federal rules of evidence and Wisconsin rules of evidence are similar.).

[9] The federal immigration advisement provides the same substantive warnings as Wis. Stat. § 971.08(1)(c) with minor linguistic differences:

> Before the court accepts a plea of guilty or nolo contendre . . . the court must address the defendant personally in open court . . . that, if convicted, a defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

(continued)

18

¶35 Imperfect plea colloquies in federal courts are subject to harmless error analysis. Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."). Federal courts consider an imperfect immigration advisement harmless error where the defendant otherwise knew of potential immigration consequences. United States v. Anderson, 624 F. App'x 106, 107 (4th Cir. 2015) (per curiam)[10] ("[W]e conclude that any such error is harmless because Anderson had actual notice of these possible immigration consequences . . . ."). This reasoning is entirely consistent with pre-Douangmala court of appeals decisions applying harmless error to Wis. Stat. § 971.08(2), e.g., State v. Lopez, 196 Wis. 2d 725, 731, 539 N.W.2d 700, and our holding today.

¶36 In light of the foregoing, we hold that Douangmala was objectively wrong because it failed to consider the mandatory language in Wis. Stat. §§ 971.26 and 805.18 and thus overrule it. Additionally, we reinstate Chavez,[11] Issa,[12] Lopez,[13] and

---

Fed. R. Crim. P. 11(b)(1)(O).

[10] No published federal court decisions apply harmless error under rule 11(h) to plea colloquies that imperfectly state the immigration advisement required by rule 11(b)(1)(O) due to the short time rule 11(b)(1)(O) has been in existence. We are thus left with only unpublished decisions, of which United States v. Anderson is the most analogous to Reyes Fuerte's situation, 624 F. App'x 106 (4th Cir. 2015) (per curiam). Anderson is citable in federal courts. Fed. R. App. P. 32.1(a) (allowing citation to unpublished decisions issued on or after January 1, 2007).

[11] State v. Chavez, 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993).

19

Garcia[14] as valid law and binding precedent. See Steele v. State, 97 Wis. 2d 72, 85, 294 N.W.2d 2 (1978) (reinstating cases overruled by the case Steele overruled).[15]

C. The circuit court's errors were harmless.

¶37 The circuit court made two errors in its immigration advisement: (1) completely omitting any mention of denial of naturalization and (2) using the term "resident" instead of "citizen." We hold both errors were harmless.

¶38 We identify three reasons these errors were harmless. First, defense counsel testified at the plea withdrawal hearing that he went over the Plea Questionnaire/Waiver of Rights form in Spanish with Reyes Fuerte. The form contains language

---

[12] State v. Issa, 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994).

[13] State v. Lopez, 196 Wis. 2d 725, 539 N.W.2d 700 (Ct. App. 1995).

[14] State v. Garcia, 2000 WI App 81, 234 Wis. 2d 304, 610 N.W.2d 180 (Ct. App. 2000).

[15] Since Douangmala, the court of appeals developed a line of cases that applied the substantial compliance doctrine to immigration advisements under Wis. Stat. § 971.08(1)(c). State v. Mursal, 2013 WI App 125, 351 Wis. 2d 180, 839 N.W.2d 180. An immigration advisement substantially complied with § 971.08(1)(c) if it explained all elements of the statute. Id., ¶16. Thus, minor linguistic differences that did not change the meaning of the advisement could not form the basis of plea withdrawal under § 971.08(2). Id. Our decision today does not affect the substantial compliance doctrine, as no error is present in an immigration advisement that substantially complies with § 971.08(1)(c).

substantially similar to that of Wis. Stat. § 971.08(1)(c).[16] Wisconsin Court System, Circuit Court Form CR-227, Plea Questionnaire/Waiver of Rights (revised May 1, 2004), https://www.wicourts.gov/formdisplay/CR-227.pdf?formNumber=CR-227&formType=Form&formatId=2&language=en. Thus, we conclude that Reyes Fuerte had actual knowledge of the potential immigration consequences of his plea and thus the circuit court's errors were harmless. This is consistent with pre-Douangmala court of appeals decisions applying harmless error to § 971.08(2). The court of appeals in Lopez concluded the error was harmless where the trial court completely omitted the immigration advisement during the plea colloquy, but trial counsel testified to going over the Plea Questionnaire/Waiver of Rights form in Spanish with the defendant. State v. Lopez, 196 Wis. 2d 725, 728-29, 539 N.W.2d 700 (Ct. App. 1995). The facts of Lopez are even more extreme than this case because the circuit court at least gave Reyes Fuerte an advisement, albeit an imperfect one. Our conclusion is further bolstered by Garcia, which found harmless error where the defendant had actual knowledge of the potential immigration consequences

---

[16] The relevant language in the Plea Questionnaire/Waiver of Rights form states: "I understand that if I am not a citizen of the United States, my plea could result in deportation, the exclusion of admission to this country, or the denial of naturalization under federal law." Wisconsin Court System, Circuit Court Form CR-227, Plea Questionnaire/Waiver of Rights (revised May 1, 2004), https://www.wicourts.gov/formdisplay/CR-227.pdf?formNumber=CR-227&formType=Form&formatId=2&language=en.

21

through, _inter alia_, going over the plea waiver form with counsel. _State v. Garcia_, 2000 WI App 81, ¶¶3, 14, 234 Wis. 2d 304, 610 N.W.2d 180.

¶39 Next, Reyes Fuerte has not alleged ineffective assistance of counsel under _Padilla v. Kentucky_, 559 U.S. 356 (2010). _Padilla_ held that effective assistance of counsel under the Sixth Amendment requires defense attorneys to inform criminal defendants of the potential immigration consequences of a plea. _Id._ at 374. We do not hold that the mere lack of a _Padilla_ ineffective assistance claim is sufficient, on its own, to prove actual knowledge and thus harmless error when a circuit court fails to give the advisement as required by Wis. Stat. § 971.08(1)(c). However, the lack of such a claim can be a factor to be included in our consideration to support other facts of record that show actual knowledge and harmless error.

¶40 Finally, we hold the circuit court's error was harmless because the immigration consequence at issue in this case—deportation—was raised by the circuit court. Reyes Fuerte brought his motion because he was concerned about being deported, not because he was concerned about being denied naturalization. Reyes Fuerte never argues that the advisement given for deportation was deficient in any way. Thus, the circuit court's error in omitting denial of naturalization is harmless.

¶41 We hold that, under the circumstances of this case, the circuit court's errors in giving the plea advisement required by Wis. Stat. § 971.08(1)(c) are harmless. Reyes

22

Fuerte knew of the potential immigration consequences because his counsel went over the plea waiver form, which contains a substantially similar advisement, with him in Spanish. The failure to bring any ineffective assistance claim under Padilla further indicates that counsel did inform Reyes Fuerte of the potential immigration consequences of his plea. Finally, the two immigration consequences relevant to Reyes Fuerte were raised by the circuit court, such that he had knowledge of those potential consequences.[17] To allow him to withdraw his plea now would be to allow him to "manipulate [Wisconsin's] criminal justice system in order to circumvent the immigration laws;" we cannot accept that the legislature intended to, or actually did, write § 971.08(2) to have such a result. State v. Issa, 186 Wis. 2d 199, 212, 519 N.W.2d 741 (Ct. App. 1994) (Fine, J., concurring).

## IV. CONCLUSION

¶42 We hold that Reyes Fuerte is not entitled to withdraw his pleas of guilty to attempting to flee or elude a traffic officer, contrary to Wis. Stat. § 346.04(3), and second-offense operating with a restricted controlled substance in his blood,

---

[17] The record reveals that Reyes Fuerte was in deportation proceedings at the time of his guilty plea. However, the record does not state why he was in deportation proceedings; it may have been for the conduct underlying the charges in this case, but it may not have. Thus, we leave for another case whether a defendant who was already in deportation proceedings for the conduct underlying the criminal charge is imputed with knowledge that a guilty or no contest plea may bring adverse immigration consequences.

23

contrary to Wis. Stat. § 346.63(1)(am), pursuant to Wis. Stat. § 971.08(2) because the circuit court's error in giving an imperfect immigration advisement under Wis. Stat. § 971.08(1)(c) was harmless. In so doing, we overrule this court's decision in State v. Douangmala, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1 because it was objectively wrong due to its failure to properly address the harmless error statutes.

*By the Court.*—The decision of the court of appeals is reversed.

¶43 SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The State of Wisconsin, petitioner in the instant case, presented one issue for review:

> Now that criminal defense attorneys are obligated to advise their clients about the immigration consequences of their pleas, Padilla v. Kentucky, 559 U.S. 356 (2010), should the Wisconsin Supreme Court overturn its decision in State v. Douangmala, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1, and reinstate the harmless error rule to prohibit a defendant who was aware of the potential immigration consequences of his plea from being able to withdraw the plea because the circuit court failed to give a statutory immigration warning that complied with Wis. Stat. § 971.08(1)(c)?

Rather than answer this single question limited to the effect of Padilla v. Kentucky, 559 U.S. 356 (2010), the majority opinion reaches beyond the issue presented to reinterpret anew Wis. Stat. §§ 971.08(1)(c), 971.08(2), and 971.26. In so doing, the majority overrules State v. Douangmala, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1, a unanimous decision of this court that has gone unchallenged for fifteen years and has been cited and relied upon in numerous cases. As the majority makes clear, Padilla has no effect on Douangmala.

¶44 The majority's errors are threefold. First, Douangmala was properly decided, and the majority's contrary conclusion is unpersuasive and objectively wrong. Second, the majority announces a novel interpretation of the harmless error statute with implications far beyond the present case, affecting future petitions for plea withdrawal under Wis. Stat. § 971.08(2). Third, the majority flouts the generally accepted rule of stare decisis that an appellate court adheres to its own

1

prior decisions unless there are compelling reasons not to do so. Accordingly, I dissent.

I

¶45 In <u>Douangmala</u>, the unanimous court reached two conclusions:

(1) The plain text of Wis. Stat. § 971.08(1)(c) directs and requires a circuit court to address a defendant personally and advise the defendant that his plea of guilty or no contest for the offense may result in deportation, the exclusion from admission to the United States, or the denial of naturalization; and

(2) If the circuit court fails to so advise a defendant who later shows that the plea is likely to result in deportation, the exclusion from admission to the United States, or the denial of naturalization, the court shall vacate any applicable judgement and allow the defendant to withdraw his plea.

<u>Douangmala</u>, 253 Wis. 2d 173, ¶¶3, 4.

¶46 In reaching these conclusions, the <u>Douangmala</u> court examined Wis. Stat. §§ 971.08(1)(c), 971.08(2), and 971.26.

¶47 Wisconsin Stat. § 971.08(1)(c) directs a circuit court to give a warning about immigration consequences. Before the court accepts a plea of guilty or no contest, the legislature requires the circuit court to do the following:

> Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion

2

from admission to this country or the denial of naturalization, under federal law."

Wis. Stat. § 971.08(1)(c).

¶48 Wisconsin Stat. § 971.08(2) provides the remedy if the circuit court fails to give the statutorily mandated warnings about immigration consequences. The remedy provision of the statute reads as follows:

> If a court fails to advise a defendant as required by sub.(1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

Wis. Stat. § 971.08(2).

¶49 I turn now to Wis. Stat. § 971.26, the harmless error statute. This statute saves numerous proceedings in which an error is made. The harmless error statute applied in criminal cases provides as follows:

> No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant.

Wis. Stat. § 971.26.[1]

---

[1] The majority also invokes Wis. Stat. § 805.18, the harmless error statute applicable to civil actions. The majority claims that § 805.18 is made applicable to criminal actions by Wis. Stat. § 972.11(1). Majority op., ¶22. Wisconsin Stat. § 972.11(1) provides as follows:

> Except as provided in subs. (2) to (4), the rules of evidence and practice in civil actions shall be applicable in all criminal proceedings unless the

(continued)

3

¶50 I now return to Wis. Stat. § 971.08. Applying the plain text rule of interpretation to § 971.08(2), the unanimous Douangmala court concluded that if a circuit court fails to give the statutory warning, the legislature explicitly directs that the defendant is entitled to withdraw the plea upon a showing that the plea is likely to result in the defendant's deportation. Douangmala, 253 Wis. 2d 173, ¶¶3, 4.

¶51 Relying on the text of Wis. Stat. § 971.08(2), the unanimous Douangmala court also concluded that prior cases applying the harmless error rule to § 971.08 were "objectively wrong under the language of the statute." Douangmala, 253 Wis. 2d 173, ¶42. These cases were explicitly overruled. Douangmala, 253 Wis. 2d 173, ¶42.

¶52 The justices joining the majority opinion——committed to applying the same plain-text analysis to the identical text of the statutes interpreted in Douangmala——overrule the unanimous Douangmala decision believing it to be "objectively wrong." The majority faults the Douangmala court for failing to

---

context of a section or rule manifestly requires a different construction. No guardian ad litem need be appointed for a defendant in a criminal action. Chapters 885 to 895 and 995, except ss. 804.02 to 804.07 and 887.23 to 887.26, shall apply in all criminal proceedings.

Wis. Stat. § 972.11(1).

The majority does not explain how or why § 805.18 constitutes a "rule[] of evidence or practice in civil actions." Thus, § 805.18's applicability to criminal cases is, at best, questionable. Regardless, there is nothing in my analysis that would be affected by § 805.18's applicability.

4

harmonize Wis. Stat. § 971.08(2) (remedy provision) with Wis. Stat. § 971.26 (harmless error). Majority op., ¶¶26-36.

¶53 The majority acknowledges that when two statutes conflict with one another, the more specific statute takes precedence over the more general statute. Majority op., ¶29.[2]

¶54 The majority gets around this rule, however, by declaring "that applying harmless error analysis does not facially violate Wis. Stat. § 971.08(2), but failing to apply harmless error analysis does facially violate Wis. Stat. §§ 971.26 and 805.18." Majority op., ¶32.

¶55 Curiously, the majority does not explain its assertion. The majority recognizes that both Wis. Stat. § 971.08(2) and § 971.26 use the mandatory "shall," and neither statute is "more mandatory" than the other, but the majority somehow reaches the conclusion that applying the harmless error rule to § 971.08(2) does not create a conflict. How? Wis. Stat. § 971.08(2) sets forth a simple "if-then" conditional sentence: If the circuit court fails to provide the immigration consequence warning and the defendant shows that his plea is likely to result in deportation, then the circuit court shall

---

[2] The majority relies on Rouse v. Theda Clark Med. Ctr., 2007 WI 87, ¶37, 302 Wis. 2d 358, 735 N.W.2d 30. See also Marder v. Bd. of Regents of Univ. of Wis. Sys., 2005 WI 159, ¶23, 286 Wis. 2d 252, 706 N.W.2d 110 ("[W]here a specific statutory provision leads in one direction and a general statutory provision in another, the specific statutory provision controls.").

vacate the applicable judgment and permit the defendant to withdraw his plea. No exception is made for harmless errors.[3]

¶56 In my view, it is evident that there is a conflict between Wis. Stat. §§ 971.08(2) and 971.26. To resolve this conflict, the more specific statute should control over the more general statute.

II

¶57 I must also call attention to the staggering breadth of the majority's application of the harmless error statute in the instant case, and therefore, in future cases. See majority op., ¶¶31-33. According to the majority, in a battle between competing "shall" directives, the harmless error statute will always win out. This conclusion is in part supported by the

---

[3] The majority points out that harmless error statutes existed long before Wis. Stat. § 971.08(2) was enacted. So what? This court has given effect to specific statutes over general statutes for at least a century. See Chippewa & Flambeau Improvement Co. v. R.R. Comm'n of Wis., 159 N.W. 739, 744, 164 Wis. 105 (1916). Rather than explicitly excepting § 971.08(2) from the harmless error rule, the legislature has relied on the courts to apply this century-old canon of construction to give effect to § 971.08(2).

Moreover, the majority relies in part on Federal Rule of Criminal Procedure 11(b)(1)(O), which requires a federal district court to inform defendants that their conviction may result in adverse immigration consequences before accepting their pleas of guilty or nolo contendere. Majority op., ¶34. A defendant's claim that Rule 11(b)(1)(O) was violated is subject to harmless error analysis. Majority op., ¶35 (citing United States v. Anderson, 624 F. App'x 106, 107 (4th Cir. 2015)). However, there is no federal analogue to Wis. Stat. § 971.08(2), and it is the remedy provision unique to Wisconsin that is at issue in the instant case. The federal rule is of no help to the majority.

6

fact that the harmless error statute, in one form or another, existed at least as early as 1897, long before Wis. Stat. § 971.08(2) was enacted.

¶58 Apparently, hereafter, every statute enacted and every case decided after 1897 is subject to a mandatory harmless error analysis (except perhaps when a violation of a constitutional or statutory provision has been declared prejudicial per se). This poses a conundrum for legislative drafters: What words should the drafter use if the legislature does not want the mandatory harmless error statute to apply? The legislature explicitly stated in the instant case that it did not want the mandatory harmless error to apply but the majority is ignoring the legislative direction.

III

¶59 I now turn to the issue of affording due respect to precedent. The court's interpretation and application of Wis. Stat. § 971.08 and the harmless error statute has not been challenged or changed since the Douangmala decision. Since Douangmala was decided, neither the text of § 971.08(2) nor the text of the harmless error statute has been changed by the legislature. Generally speaking, legislative acquiescence to a judicial construction of a statute gives rise to a presumption that the judicial construction should stand. See, e.g., Force ex rel. Welcenbach v. Am. Family Mut. Ins. Co., 2014 WI 82, ¶124 n.76, 356 Wis. 2d 582, 850 N.W.2d 866; Milwaukee Journal Sentinel v. City of Milwaukee, 2012 WI 65, ¶43, n.21, 341 Wis. 2d 607, 815 N.W.2d 367; Wenke v. Gehl Co., 2004 WI 103,

7

¶¶32-35, 274 Wis. 2d 220, 682 N.W.2d 405; State v. Hansen, 2001 WI 53, ¶38, 243 Wis. 2d 328, 627 N.W.2d 195; Reiter v. Dyken, 95 Wis. 2d 461, 471-72, 290 N.W.2d 510 (1980).

¶60 Furthermore, litigants and courts have relied on Douangmala. Douangmala has been cited 168 times. Though not an absolute rule, stare decisis protects litigants' and courts' reliance on judicial decisions.

¶61 A court should not overrule a judicial interpretation of a statute when the court simply disagrees with the rationale of the prior decision. Rather, the party seeking the overruling must show "not only that [the decision] was mistaken but also that it was objectively wrong, so that the court has a compelling reason to overrule it." Wenke, 274 Wis. 2d 220, ¶21. As I explained above, there are no compelling reasons for overruling Douangmala, and the majority reaches a contrary conclusion overruling Douangmala by hoping that the reader will not scrutinize the majority's baseless conclusion that applying harmless error to Wis. Stat. § 971.08(2) does not give rise to a conflict——even though it plainly does.

¶62 Though not an absolute rule, stare decisis promotes stability, coherence, and the rule of law. By disregarding the generally accepted interpretative approach of adhering to a prior judicial interpretation of a statute and by overruling the

Douangmala decision, the majority scoffs at stare decisis and jeopardizes finality and certainty in the law.[4]

\* \* \* \*

¶63 The majority has no justification beyond its doctrinal disposition to overrule Douangmala. The only change since the Douangmala decision is the make up of the court. A change in judges is not a valid reason to overturn a decision of the court. "A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the Government. No misconception could do more lasting injury to this Court and to the system of law which it is our abiding mission to serve." Mitchell v. W.T. Grant Co., 416 U.S. 600, 636 (1974) (Stewart, J., dissenting).

¶64 The majority opinion represents the will of the justices joining the opinion; it does not promote the rule of law. Accordingly, I dissent.

¶65 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissenting opinion.

---

[4] See also Planned Parenthood of S.E. Penn. v. Casey, 505 U.S. 833, 864 (1992) (citing Mitchell) ("To overrule prior law for no other reason than [a present doctrinal disposition to come out differently from the previous court] would run counter to the view repeated in our cases, that a decision to overrule should rest on some special reason over and above the belief that a prior case was wrongly decided."); Mapp v. Ohio, 367 U.S. 643, 677 (1961) (Harlan, J., dissenting).

9